ABIATHAR G. BRITTON *v.* WARNER PRESTON Trustee of JAS. LANGLEY.

Orange, *March,* 1837.

A negotiable promissory note is liable to be taken by a trustee process, as the property of the payee, notwithstanding an assignment of it by him, unless the maker has notice of the assignment. But after it has been once assigned, the rule is different, and it cannot be taken as the property of a subsequent holder, after a *bona fide* assignment by him, although no notice is given to the maker.

This was a trustee process. The County court adjudged Preston to be trustee of Langley, to which Preston excepted. The facts of the case sufficiently appear in the opinion of the court.

*D. Cobb,* and *L. B. Peck, for trustee.*

That the transfer of the notes in question from Langley to Moore was *bona fide,* and for a good consideration, has not heretofore, and it is presumed, will not now be questioned. The evidence is full and clear that the notes were delivered to secure the payment of a debt, due from the former to the latter, and were there no evidence in the case, other than the trustee's disclosure, the court would presume the transfer to have been made for an honest purpose, and upon good consideration. *Newell* v. *Adams,* 1 D. Chip. Rep. 346. The plaintiff put the case, in the court below, upon the ground that, his writ having been served before Moore gave Preston notice of the transfer from Langley, the assignment was overreached and defeated by his attachment; and, probably, this is the great question in the case.

I. The first section of the trustee act, 1 Comp. stat. 149, provides that if any person shall have, in his *possession,* any rights or credits of an absconding or concealed debtor, he may be trusteed; and the 5th sec. of the same act declares, that if it shall appear from the disclosure of the trustee, or from other evidence, that he had rights or credits of the debtor, in his *possession,* at the *time* of the *service* of the trustee process, he shall be adjudged trustee, &c. This case, then, upon a correct construction of the act, does not come within its provisions; for Langley, months before the service of the plaintiff's writ, had transferred the notes to Moore. By this transfer, his interest in the notes passed to, and vested in Moore. Nothing could be attached under this process, but Langley's interest, and, as that had been previously transferred, there was nothing to attach. An attaching creditor cannot stand on a better footing than his debtor, if the assignment be not

Orange,
March,
1837.

Britton,
v.
Preston,
Trustee·

fraudulent as to creditors : and if he attach any property of his debtor, it must be attached subject to all lawfully existing liens created by his debtor. And, consequently, if his debtor have no interest in a *chose in action,* the creditor cannot acquire any, by his attachment.. Therefore the want of notice to the trustee will not defeat the assignee's interest in the debt, in favor of an attaching creditor. _Dix et al._ v. *Cobb & Trustee,* 4 Mass. Rep. 508. *Ammidown* v. *Wheelock & Trustee,* 8 Pick. 470. *Bholen et al.* v. *Cleaveland et al.,* 5 Mason, 174. *St. John* v. *Smith,* 1 Root, 156, and the cases there cited. *U. States* v. *Vaughan & Trustees,* 3 Binn. 394. 1 Dall. 3., 4 id. 279. 2 id. 211. 7 Vin. 225. pl. 15. 226. pl. 18. In Connecticut a somewhat different doctrine has been established. It is there held that, when a *chose in action* has been assigned, the promisee remains the legal owner of the debt, until notice of the assignment is given to the promisor. But when the debt has been once assigned, and notice given to the promisor, this deprives him in equity of the right of making payment to the original promisee, and compels him to hold the money in trust for the equitable owner and holder of the debt. The mere sale and delivery, therefore, is sufficient to destroy the equitable interest of the assignee ; and it is not necessary that the second, or any subsequent assignee, should give notice to the promisor, in order to protect the debt against the creditors of the payee, or any previous assignee. *Greene* v. *Gillett,* 5 Day, 485. In the present case, and long before the commencement of this suit, Preston had notice that notes had passed out of the hands of the payee, and gone into circulation, so that it is quite immaterial, as regards the decision of this case, whether the court adopt the Massachusetts or Connecticut rule. The application of either discharges the trustee.

II. But negotiable paper is not within the spirit and meaning of the trustee act ; especially after it has been put in circulation by the original holder. Our statute, relating to paper of this character, was passed to protect the maker in such payments as he might make to the payee, before notice of the assignment. We insist that, after a negotiable note has passed out of the hands of the payee, by indorsement, and the maker is apprised of this fact, the case is without the statute, and the note then stands upon the same footing as similar paper in England, and its circulation and the rights of the holder protected and controlled

Orango
March,
1837.

Britton
v.
Preston,
Trustee.

by the law merchant. One of the cardinal principles of this law is, that the *bonâ fide* holder of a negotiable paper can be affected by nothing, save what appears upon its face. A negotiable note, before it has been negotiated, may be attached on a demand against the payee, liable to be defeated by the transfer of the note, at any time before it falls due. *Enos* v. *Tuttle*, 3 Conn. Rep. 27. Per Addison & Shippen, Js. 4 Dallas, 63. A note payable to one or his order, and indorsed in blank, is transferable merely by delivery. Doug. 633, 9. This right of transfer, *by delivery*, was part, if not the essence of the contract, which could not be defeated, or modified, by Preston himself. Ought this right of transfer to de defeated by a creditor of the holder? By the very terms of the contract, Preston is to pay the notes to the person, who shall hold them when they fall due. Can a creditor of any individual, through whose hands the notes may have passed in their circulation, change the nature of the contract, and, in effect, destroy the negotiability of the paper? This doctrine is startling, in the extreme. If it is applied to a promissory note, it must also be extended to bills of exchange. Will not the same principle embrace bank notes, payable to bearer? It is true they pass by *delivery*, and so do negotiable notes, indorsed in blank. The recognition of such a doctrine, by this court, must inevitably destroy the negotiation of any note or bill of exchange, out of the State, to which a citizen of Vermont is a party. The little confidence, which now exists abroad, in the negotiable paper of this State, would be entirely extinguished. It can hardly be believed that the Legislature ever intended that the act should have such an effect. It is very clear that the case at bar does not come within the *terms* of the act, and if it is brought within its provisions, it is only done by a most liberal construction of the statute. This court will not be inclined to extend the statute beyond the fair and obvious import of its terms, when the effect of a forced construction would entirely destroy, as regards this State, a system, to which England is, in a great measure, indebted for her power, and which is rapidly increasing the wealth of every commercial part of our own extended country. But if the plaintiff could bring his case within the statute, by construing it according to the ordinary sense of the words, still, if this construction would lead to the embarrasing result suggested, the grammatical sense of the words should be so modified, that the

Orange,
March.
1837.

Britton,
v.
Preston,
Trustee.

difficulty may be avoided. *Rex* v. *Pease et al.*, 4 B. & A. 30. 24 Com. L. Rep. 17. *Eyston* v. *Studd*, Plowd. 363. Bac. Abr. Statute, I.

*J. W. D. Parker and A. G. Britton, for plaintiff.*

I. The statute, upon which the process is founded, being a remedial act, should be liberally and beneficially expounded, to prevent fraud and advance the remedy sought. This is wholly a statute process, prescribing a mode of calling funds out of the trustee's hands, which could not be reached there, by the ordinary process of the common law—thus transferring moneys from the trustee to the principal's creditor, by virtue of its own provisions alone, which the factor justly owes, and ought not in justice to detain. Com. Laws, 151. Sects. 1 & 5. *Huntington* v. *Bishop, trustee of Spooner*, 5 Vt. Rep. 195, 196.

II. Preston being here a mere stake-holder, as between the plaintiff and Moore, who defends under Preston, Moore, to entitle himself to this money against the right of this plaintiff, should prove notice to Preston of the assignment of the notes to him, before the trustee was summoned in this action, or should himself have instituted a similar process. The property of the notes was vested in Langley, by the indorsement from Smith to him, and the assent of Preston to that assignment operated as notice to him, and the interest in them has never legally passed out of Langley, so as to defeat the claim of the plaintiff. And Langley could have released Preston, at any time prior to the 20th November, 1835, and thus have defeated Moore's claim. *Tudor & Woodbridge* v. *Perkins*, 1 Swift's Dig. 731. *Strong*, v. *Strong*, 2 Aikens' Rep. 377. *Newell* v. *Adams*, 1 D. Chip. Rep. 346.

III. To whom could Preston have paid these notes, or to whom could he have made a legal tender—one that could have availed him, after the sale and indorsement to Langley—but to Langley? A tender to Langley by Preston, before notice that the notes had been passed from him to some other person, would be a bar to any action, that might be brought afterwards on these notes, in what hands soever they might be. On the 27th of October, 1835, the time these trustee suits were served, the property of these notes was in Langley, and a tender or payment, made to him by the payor of the notes, before service of the trustee process, would have been a good answer to discharge him as trustee. Again, had Preston sued Moore, could he have plead-

ed these notes in offset, without previous notice ? Certainly not.

Orange,
*March,*
1837.

Britton
*v.*
Preston,
Trustee.

IV. The service of the trustee process on the trustee fixes the property in his hands, from and after that time, for the benefit of the creditor plaintiff; and nothing can divert its application to the payment of the debt sued for, except a prior, better and permanent right, vested in some one else. Had Moore, in this case, such right, either in law or equity ? The plaintiff contends that he had not. Moore had received these notes, in April, 1835, of Langley and had given a receipt for them, supposed as collateral security for a debt Langley owed Moore. Moore lies by and gives Preston no notice of the transaction for six months, nor until Langley had absconded. There is no pretence, then, that Preston knew that Moore had the notes until after the service of the trustee suits. The creditors, in these trustee suits, were the first to give Preston notice that they have claims against Langley, and wish to hold the property in his hands, belonging to Langley, for the payment. They, being first in diligence, are first in right both in law and equity. The court, in the case of *Huntington* v. *Bishop,* cited above, say the trustee process " is a creature of the statute, a part of the attachment law ; and the object is to secure the estate of the principal debtor, to respond the judgment, rendered in the principal suit." Then he who sues and serves process first, in trustee suits, shall and must hold first. The principles laid down, in the case above cited, are such as we presume the court will sustain. The court, there speaking of the trustee process, say, " after the service of the process, the trustee becomes a stakeholder, a depository of the effects of the party, ultimately entitled to them. He is treated like a trustee. He is called upon to disclose under oath, as to the effects in his hands. And the trust is enforced precisely as it would be in chancery." The first attaching creditor holds first—the second before the third, and so on—*toties quoties.* The first creditor, who sues and serves process on the trustee, holds first, and so on, as in an attachment of real and personal estate. If the grantee of land neglect to record his deed, the creditors of the grantor may attach the land and hold it ; and why ? Because the grantee has neglected to give notice that he owns the land, by causing the evidence of his title to be recorded. Moore, if he had any demand against Langley, might, and now may commence his suit against Preston, as trustee of Lang-

Orange,
March,
1837.

Britton
v.
Preston,
Trustee.

ley ; and will it be contended that he stands on any better grounds, to hold the property, than if he had sued him on the 20th November, 1835, when Moore gave Preston notice that he held the notes in question ? Suppose Langley had absconded with the notes in his hands, and had, the day before the service of the trustee process, transferred these notes to a third person, would such third person hold the pay on them against this plaintiff? Suppose Preston had met Langley in the State of New York, or elsewhere, and had paid or tendered him the money due on these notes, before he had had notice of the transfer to said third person ? Will it be pretended, that such payment or tender would be no defence for Preston, should such third person sue him on the notes ? Suppose again, that Moore had neglected to notify Preston that he had the notes, until after December Term 1835, and Preston had made his disclosure, and the court had adjudged him trustee, as they must have done. If the delivery of the notes to Moore vested the property in him, absolutely, without notice, the consequence would be, that Preston would have to pay the notes twice. Suppose Preston had been summoned as the trustee of Smith, after he had been notified of the transfer of the notes to Langley by Smith, and the fact of the transfer stated in the trustee's disclosure ; could the court charge him as the trustee of Smith ? *Stuart* v. *Barnum*, Brayton, 173.

V. Lastly—*vigilantibus, non dormientibus, leges subveniunt.* For want of being watchful, and by negligence, a right may be lost. The statute of limitations may bar a right. A party, by standing by and not asserting his right to property, when claimed by a creditor of a third person, may lose his right. Even the King loses his right to a waif, if the owner retake the property before the King's agent. 1 Black. Com. 297.

The opinion of the court was delivered by

PHELPS, J.—The note of Preston, which is the object of this process, appears to have been made payable, originally, to one Smith, was endorsed by him to Langley, the principal debtor, and subsequently by Langley to Moore. Notice was duly given to Preston of the first transfer, but no notice was given to him of the latter transfer, until after the service of this process, although the transfer took place before the attachment. Under these circumstances the question is raised, whether notice to Preston is essential to complete the transfer, or whether the at-

Orange,
March,
1837.

Britton.
v.
Preston,
Trustee.

tachment, by this process, will overreach the assignment, by reason of the want of notice.

This proceeding, being in the nature of an attachment, and proceeding, not only in form, but in substance, upon equitable principles, it follows that, like any other attachment, it will hold nothing, which is not equitably and legally the property of the debtor.   In Massachusetts, where this process is common, it has been uniformly held, that it will not hold a chose in action, which has been previously assigned, and is not equitably and legally the property of the principal debtor, at the time of the attachment. This doctrine has always appeared to me to be most consonant to principle, although it must be admitted there are considerations of policy, which make strongly in favor of a different rule.

In Connecticut, on the other hand, it has been held, that notice of the transfer of a note is essential to the assignment, and if notice to the maker be wanting, the trustee or factorizing process will hold, notwithstanding the assignment. This rule has been adopted in this State, in preference to the Massachusetts rule, and is now, I believe, considered the settled law of the State. But this rule has never been applied to any but an assignment by the payee.   After the note, if negotiable, has passed from his hands and become transferable by delivery only, it is not subject to this process, except as against the person, who is really and equitably the proprietor of the note, at the time of the service of the process. This was decided in *Greene v. Gillet,* 5 Day, 485. Whatever reason there may be for the rule requiring notice, so far as the original payee is concerned, it certainly fails, when the note has obtained circulation, and passes, like a bank bill, from hand to hand.   To require notice, in such case, of every transfer, would embarrass the circulation of paper—would be productive of great inconvenience, and, in a majority of cases, operate unjustly in its application.   There is no propriety in taking one man's property to pay the debt of another; and nothing reconciles me to the rule adopted in this State, except the consideration, that it may prevent frauds. But there is no precedent for extending the rule to a case like the present.   In such a case, the authorities from Connecticut and Massachusetts agree.   Considering the law of those States, in this particular, reasonable and just, we are inclined to adopt it and hold, in this case, that

Orange,
March,
1837

Britton
v.
Preston,
Trustee.

notice to Preston was not essential to the assignment by Langley to Moore.

Judgment of County Court reversed, and Judgment that Preston is not trustee.