HON. JOHN PIERPOINT,
HON. JAMES BARRETT, } ASSISTANT JUDGES.
HON. LOYAL C. KELLOGG,

---

ALONZO SEWARD *v.* ANDREW GARLIN, *and Trustees,* N. D. WAIT, S. W. JENNISON AND J. P. PLACE, *and Claimant,* WILLIAM GARLIN.

*Prommissory note. Trustee process. Evidence.*

The necessity of giving notice to the maker of the transfer of a promissory note, in order to prevent its attachment by the trustee process by the creditors of the assignor, is not confined to the first transfer, but applies to all assignments of the note. If the note is liable to attachment by the creditors

Seward *v.* Garlin et al.

of any holder, it continues so liable until due notice of its transfer by such holder to another party is given to the maker.

It is not necessary that the assignee of a promissory note should, in express terms, inform the maker that it has been assigned to him. It is sufficient notice if such conversation takes place between them on the subject of the note, as would naturally and reasonably satisfy the maker of the fact of the transfer of the note to the assignee.

Notice of the transfer of a note given by the assignee to the principal is sufficient to prevent its attachment by the creditors of the assignor, notwithstanding no notice be given to the sureties upon the note.

If a party introduce a witness who necessarily knows whether the testimony of the party himself is true or not, such testimony having been contradicted by evidence upon the other side, and entirely neglects to inquire of such witness in regard to the point so in controversy, but confines his inquiry to other matters, and the witness does not testify on such point, the omission of the party to put such inquiry to the witness may be weighed by the jury as a circumstance tending to show that the testimony of the party upon such point is not true.

TRUSTEE PROCESS. The trustees disclosed that the trustee, Wait, as principal, and the other trustees as his sureties, executed and delivered to the claimant a promissory note in payment for a span of horses, sold by the claimant to Wait; that the defendant, previous to the service of the trustee process upon the trustees, notified Wait that the claimant had transferred the note to him; and that no notice of any other transfer of the note was given to any of the trustees prior to the service of the trustee process upon them.

The claimant filed allegations to the effect that the note in question was never the property of the defendant, but that the claimant allowed the defendant, who was his son, to take the note simply for the purpose of disposing of it in payment for a piece of land, which he had some thoughts then of buying; but that the defendant abandoned his idea of purchasing the land, and returned the note to the claimant prior to the service of the trustee process upon the trustees, at which time the claimant alleged that he was the sole owner and in possession of such note.

The plaintiff traversed the allegations of the claimant, and the cause was tried by jury at the April Term, 1860,—ALDIS, J., presiding.

Seward *v.* Garlin et al.

The claimant introduced evidence tending to show that previous to the service of the trustee process he delivered the note in question to his son, the defendant, upon condition that it should be used as the claimant's property, and should be put to no other use by the defendant than as part payment for a piece of land which the defendant was then contemplating purchasing, and that it should not be put to even that use unless the claimant should be satisfied with the terms of the proposed purchase when they should be ascertained : that on examination into the proposed purchase, the claimant was not satisfied with it, and told the defendant that he could not consent that the note should be used as part payment for the land, whereupon, and before the service of the trustee process upon the trustees, the defendant returned the note to the claimant, who had ever since had sole possession, control and ownership thereof. It was admitted that both the claimant and defendant were aware that the trustees, Jennison and Place, were merely sureties upon the note.

The plaintiff introduced evidence tending to prove admissions on the part of the claimant that he had transferred the note to the defendant absolutely and without any condition ; that before the service of the trustee process, Wait, who had previously been informed by the claimant that he had transferred the note to the defendant, asked the latter if he should want the money upon it when it fell due, and that the defendant replied that it would depend upon whether he should buy a piece of land or not ; that if he bought the land he should want the money upon the note as soon as it fell due, otherwise not ; and that he would let Wait know shortly whether he should want it paid or not. In this conversation Wait did not inform the defendant that he had been told by the claimant that the latter had transferred the note to him, and the foregoing conversation was the only notice received by Wait from the defendant, or any one proposing to act in his behalf, of any transfer of the note, prior to the service of the trustee process. It was not claimed that any notice whatever of any transfer of the note was ever given to the trustees, Jennison and Place, neither was any notice given to Wait prior to the service of the trustee process, that the note had been re-transferred by the defendant to the claimant.

The claimant introduced the defendant as a witness, and he testified that he had no such conversation with Wait in regard to the note, as the plaintiff's evidence tended to show, but the claimant made no inquiries of the witness, and the witness gave no testimony in regard to the terms or conditions upon which he received the note from the claimant, or returned it to him.

The claimant requested the court to charge the jury, first, that if the note was absolutely transferred by the claimant to the defendant, and the defendant, while he held and owned the note, notified all the trustees that he owned it, and if afterwards, before the trustee process was served, the defendant transferred it back to the claimant, then it was not necessary for the claimant to give notice to the makers of the note that it had been transferred to him in order to enable him to hold it as against the creditors of the defendant; secondly, that if the note was absolutely transferred by the claimant to the defendant, and no notice of such transfer was given by the defendant to any one of the signers except Wait, and it was then re-transferred to the claimant, it could not be attached by the creditors of the defendant; and thirdly, that there was no evidence tending to show a sufficient notice by the defendant to Wait of the transfer of the note to him.

The court declined to charge the jury as requested, but instructed them, among other things not excepted to, that if they found that the note was absolutely transferred by the claimant to the defendant, the notice derived by Wait from his conversation with the defendant, as testified to by Wait, was sufficient to render the note liable to attachment by the trustee process in favor of the defendant's creditors; and that after such notice to Wait, if the defendant re-transferred the note to the claimant, it would become necessary for the claimant to give Wait notice of such re-transfer in order to prevent its attachment by the defendant's creditors.

The court further instructed the jury that the fact that the defendant, being the claimant's son, was called by the latter as a witness in his behalf, and that no inquiries were made of him relating to the terms on which he received or parted with the note, might be regarded by the jury as tending to show, when unexplained, that the terms of the transfer of the note to the

defendant by the claimant, was as the plaintiff, and not as the claimant, claimed it to be, and that the omission of the claimant to put any inquiry to the defendant upon this point, might be weighed by the jury, with the other evidence, as tending to show that the transfer of the note to the defendant was absolute and unconditional.

To the refusal of the court to charge the jury as requested, and to that portion of the charge above detailed, the claimant excepted. The jury returned a verdict for the plaintiff against the claimant.

*L. E. Pelton,* for the claimant.

*H. S. Royce* and *H. G. & L. H. Edson,* for the plaintiff.

POLAND, Ch. J. The substance of the claimant's allegation upon which the issue was joined and the case tried, was that the note signed by the trustees, and which the plaintiff sought to hold by his trustee attachment, was never so transferred or delivered by him to his son Andrew, the principal debtor, as to make the note his property, and liable to be attached by his creditors. Under the issue thus formed we think the plaintiff might justly have claimed that it was not competent for the claimant to claim or prove that he had in fact sold or given the note to his son, so that the same became his sole property, and liable to attachment on his debts, but that, before the trustee attachment, the note had been re-conveyed and re-delivered to him by his son ; and upon such claim by the plaintiff it would have been the duty of the court to have confined the claimant to the single issue, of whether the note had ever been transferred to, and become the property of, the son. But it does not appear from the exceptions that the plaintiff asked to have the case so confined, and in the trial and charge the case was treated as if the issue made by the allegations was broad enough to sustain the claimant upon either of these grounds.

It is now insisted by the plaintiff that if the county court erred in the charge to the jury, in relation to necessity of notice by the claimant to the trustees of such re-transfer, in order to prevent the attachment of the note by the creditors of the son, the judgment should not for that cause be reversed, because it was really

outside the issue formed by the allegations.    We should hesitate, however, to limit the case here to ground so much narrower than that upon which it was tried in the county court, for if the plaintiff had there insisted upon confining the trial to the strict issue made by the allegation, the claimant might have moved the court for leave to amend his allegations, and it would clearly have been within the power of the court to allow such amendment, and thus have relieved the claimant from any difficulty by reason of his allegations not meeting or covering the case made by his proof.    We are, therefore, disposed to examine the correctness of the charge upon the ground, on which the case was really put to the jury.

The main ground upon which the claimant insists the court below erred, is in holding that if the note was really sold and delivered to the son, and became his property, and of which fact the maker was duly notified by the son, the debt continued liable to trustee attachment by the creditors of the son, until the maker was notified that the note had been negotiated by the son.

This question depends upon the true meaning and construction of the act of 1841, now forming sec. 45 of chap. 32 Comp. Stat.    That statute provides that "All negotiable paper, whether under or over due, may be attached by, and the same shall be subject to, the operation of the trustee process, unless it shall appear that the same had been negotiated, and notice thereof given to the maker or endorser before the service of the trustee process on him."

The claimant insists that the notice required to be given of a negotiation or assignment of a negotiable note or bill in order to protect it from trustee attachment, only applies to the negotiation of it by the original holder, the payee, or drawee, and not to a transfer of it by a second, or any subsequent holder, and that such subsequent assignee is under no necessity to give notice, in order to protect the debt from attachment by the creditors of his immediate assignor.

In order more clearly to see the object and purpose of the statute, it may be well to recur a moment to the history of our legislation upon this subject.    The act of 1798, Slade's Stat. 144, allowing endorsers of negotiable notes or bills to sue in their

own names, contained a provision that in such actions the defendant might set up any offset which he had against the original payee, before notice of the endorsement, and also might set up any other defence which would be good against the payee. Under this act it was held that until notice of such endorsement to the maker, the debt could be attached by trustee process by creditors of the payee.

In 1836 this proviso to the act of 1798 was repealed, and it was then held that negotiable paper was governed only by the established principles of the law merchant, and that a current negotiable note or bill could not be attached by trustee process against the holder, though it were shown affirmatively that the same had not been negotiated when the trustee attachment was made, and this was held upon the ground that he might still transfer the note to a *bona fide* purchaser, while current, who by the principles of mercantile law would take it unaffected with any defences which could be made to it, if sued by the original holder. The result was that negotiable paper was effectually beyond the reach of the trustee process. This continued till 1841, when the present statute was enacted. The object and purpose of the statute is clearly expressed, to make negotiable paper subject to trustee attachment, and its provisions will clearly allow it to be sometimes attached and held as the property of one person, when in point of fact it has been transferred to and is the property of another. It is not now claimed in argument that the liability of negotiable paper to trustee attachment is limited to attachment against the original holder, but it is expressly admitted that it may be attached on process against any subsequent holder, provided that he is in fact the owner and holder when the attachment is made. This admission we think is one that could not well be avoided, as the language of the statute is most general and unlimited, and could not be restricted to cases where the paper still remains in the original holder's hands, or to suits against him, without the greatest violence to its terms. The great purpose of the statute, too, to subject every man's property to the payment of his debts, in whatever shape or form it may be, equally requires it to extend to all holders of such paper. The provision of the stat-

Seward *v.* Garlin et al.

ute that such right to attach shall continue until notice of a transfer is given, is undoubtedly founded more in policy than in principle, for the purpose of preventing fraudulent and pretended transfers by debtors who desire to avoid payment of their debts, and also to furnish the creditor some means by which he can ascertain before attachment whether the debt he wishes to attach belongs to his debtor or not. Ordinarily a creditor who is seeking information on the subject of securing a debt by trustee attachment, must obtain it either from his debtor or the person owing the debt he designs to attach. Inquiry of his debtor ordinarily would defeat the very purpose and object of it, and the statute intended, so far as trustee attachments are concerned, that trustees should be so informed in relation to the ownership of debts owing by them, that they might give certain information if applied to. The principle is much the same as that requiring a visible change of the possession of personal property to accompany a sale, to make it effectual against the creditors of the vendor. If, then, the legislature intended to allow such paper to be attached at all after one transfer and notice, as the property of some subsequent holder, why should not the other provisions of the statute as to the notice he carried along with it? Is there not just the same danger of fraudulent transfers in one case as the other? And if the debt is really attached while held by a subsequent holder, has he not the same facilities for making a pretended earlier assignment as the original holder could have? And is there not just the same necessity for furnishing the creditor with some means of determining with certainty and safety when he can attach in the one case as the other? It seems to us that there is nothing in the language of the statute or in its reason and spirit that would authorize us to say that notice is not equally necessary in a second assignment of such paper as upon the first, to protect it from trustee attachment.

It is urged that this construction will operate as a clog upon the circulation and negotiability of such paper, and this no doubt is true. It is equally true of the notice which the counsel concede is required on the first transfer, but this objection was supposed to be more than balanced by the additional advantages

afforded creditors to collect their honest debts, and the overthrow
of a most convenient mode of avoiding payment by any debtor
so disposed.

Is it any more trouble for the second purchaser to make
enquiry before hand, to see if there has been a trustee attach-
ment, than for the first one, and is it any greater hardship to
require one to give notice than the other? It is not apparent to
us. We are quite unable to make the distinction between the
first transfer and a subsequent one, which the claimant does. It
seems to us not warranted by the language or spirit of the statute.
The claimant, to support his view of this subject, relies mainly
on the case of *Britton* v. *Preston and Trustee*, 9 Vt. 257, in which
it was held that after a negotiable note had been once assigned,
notice of any subsequent transfer was not necessary in order to
protect it against trustee attachments against such subsequent
assignor.

This decision was made under the act of 1798, which is
entirely different from our present statute. That act only gave
to the defendant, in an action by the endorsee, the right to set up
any defence which he might have against the *payee* before notice
of transfer, but not against any subsequent intermediate holder.
The allowing it to be attached by trustee process before notice
only came in as one of the defences against the payee.

But, as we have already seen, the present act makes negotiable
paper subject to attachment generally, without limitation, until
notice of transfer has been given. The case we think has really
very little application to the present statute, and furnishes no
guide to its proper construction.

That the evidence of notice from the principal debtor to Wait,
the principal in the note, that he held it, was sufficient to author-
ize the court to submit it to the jury; that the instructions on
that point were proper; and that notice to the principal was suffi-
cient, without notifying the sureties, are all propositions suffi-
ciently obvious not to justify any effort to make them clearer.

It only remains to notice an objection the claimant makes to
the charge of the court, as to the effect of his not calling on his
son to testify as to the transfer of the note to him. The great
question litigated before the jury was whether the claimant had

transferred the note absolutely to his son as his property, or whether he had only placed it in his hands to hold conditionally for him.

The plaintiff's evidence tended to establish that the transfer was absolute and unconditional, and most of the plaintiff's evidence seems to have consisted of admissions of the claimant. The claimant testified that it was only conditional, and endeavored to support himself by the evidence. In this state of the case he called his son (the other party to the transaction, and who must know equally with himself the terms of the transfer,) as a witness, and examined him on another point, but omitted to inquire of him at all upon the great turning point in the case. The legal presumption is that every witness called will be more favorable to the party calling him than to the opposite. Hence the rules of evidence that a party shall not put leading questions to his own witness, but may to those of his adversary ; that a party shall not be allowed to impeach a witness called by him, because by putting him forward as a witness, he produces him as a person of truth and credit. Now under such circumstances, when a party had a witness in court by whom he could support his own testimony upon the most material point in the case, and when his testimony conflicted with that on the other side, and especially when the witness had the further inducement to friendship of near relationship, what would be the ordinary and natural course we should expect of such a party ? Clearly nothing else than that he should call such witness to give his testimony in corroboration of his own. Any failure to do this could hardly happen without some motive, and in the absence of any other being shown, the almost irresistible conclusion would be that he feared at least the witness would not support his other testimony, and thus have the effect to create more or less doubt and discredit of such party's case.

How much effect such a circumstance would be entitled to would depend upon all the surroundings of the case, but when wholly unexplained, we think it a proper matter for the jury to consider and give such effect to it as they should deem it entitled to. We understand it was thus left to the jury in this case. A failure to produce proof, when in the power of the party, is recog-

nized even in criminal cases as proper to be considered by the jury. When property which has been stolen is afterward found in the possession of one who claims to have obtained it by honest purchase, but fails to produce proof of it when clearly in his power, this fact has always been regarded as proper evidence to be weighed against him. So in many cases where a party has conducted in a manner different from the natural and usual course consistent with his theory and evidence in his case, it may be shown against him.

So where a party has been guilty of any wrong course relative to his cause, like endeavoring to keep his adversary's witnesses away, or endeavoring himself to procure witnesses to testify falsely for him, all such acts are admissible in evidence to be weighed against him, though they prove nothing directly as to the fact in issue.

In short, any act or omission of a party unnatural and inconsistent with what he claims to be true, may properly be weighed against him.

The foundation upon which such evidence stands is that truth is always consistent, and usually natural and reasonable, and acts or omissions of a party in a cause which are not so, are evidence that his case is not true and honest.

We find no error in the record, and the judgment is affirmed.