**STATE of Maine**

v.

**Richard A. TOMPKINS.**

Supreme Judicial Court of Maine.

Argued May 13, 1981.

Decided July 6, 1981.

John R. Atwood, Dist. Atty. (orally), Rockland, for plaintiff.

Strout, Payson, Pallicani, Cloutier, Hokkanen & Strong, Frederick M. Newcomb, III, (orally) Rockland, for defendant.

Before McKUSICK, C. J., and WER-
NICK, NICHOLS, ROBERTS and CAR-
TER, JJ.

ROBERTS, Justice.

Richard Tompkins was convicted of es-
cape, 17–A M.R.S.A. § 755, following a
jury-waived trial in Superior Court, Knox
County. On appeal, Tompkins contends
that certain exhibits admitted into evidence
were hearsay and that the evidence was
insufficient to support his conviction. We
affirm the judgment.

Tompkins has been an inmate of the
Maine State Prison system since a 1967
conviction for manslaughter. He was eligi-
ble for parole in June 1980. In the spring
of 1980, Tompkins was transferred to the
Bolduc Minimum Security Unit in South
Warren. While at Bolduc, Tompkins partic-
ipated in the work release program, which
allows prisoners near the end of their sen-
tences to work outside the prison.

Tompkins' work release plan was un-
usual. Tompkins worked on a fishing boat,
which could be out for several days at a
time. Therefore, rather than working the
regular hours specified for other partici-
pants in the program, he was permitted to
leave and return to the prison at whatever
times his job required. The prison officials
relied on the captain of Tompkins' boat to
inform them when he would be staying out
past the program's normal five o'clock re-
turn time.

On June 7, 1980, Tompkins went to work
as usual. Although the boat did not go out
fishing, he spent the next two days working
on board. Following work on June 8, rath-
er than returning to Bolduc, Tompkins
stayed and socialized with other members
of the boat crew. Late that night, he left
with his girlfriend in her car and headed
north. He was arrested on June 10 in Ko-
kadjo, Piscataquis County.

I

■ At trial, the defendant objected to
the admission of State's Exhibits two and
three, contending that they were hearsay.
Both exhibits were copies of standard pris-
on forms signed by Tompkins. Exhibit Two
was the standard escape form for prisoners
transferred to the Bolduc Minimum Securi-
ty Unit, attesting that the prisoner has
been informed of the penalty for escape.
Exhibit Three was a copy of Tompkins'
work release plan and contained the rules
and conditions for his release.

The parties discuss whether the exhibits,
fit within the hearsay exceptions contained
in M.R.Evid. 803. We find it unnecessary
to reach Rule 803. By signing the forms,
Tompkins acknowledged his understanding
and acceptance of the rules governing the
work program. The trial court properly
admitted these exhibits, therefore, because
they were not hearsay. M.R.Evid.
801(d)(2).[1]

II

■ Title 17–A, section 755(1), provides:
A person is guilty of escape if, without
official permission, he intentionally leaves
official custody, or intentionally fails to
return to official custody following tem-
porary leave granted for a specific pur-
pose or a limited period.

Tompkins contends that the State failed to
prove intent, lack of official permission, and
failure to return within the allotted time.

Tompkins testified at trial that his em-
ployer gave him permission to go north to
look for a job that he could take after his
release on parole. The employer did not
testify. The defendant concludes that the
State therefore failed to prove that Tomp-
kins lacked official permission to be absent.

We do not suggest any inference from
either party's failure to call the employer as

1. M.R.Evid. 801(d)(2) provides:
(d) *Statements which are not hearsay.* A
*statement* is not hearsay if:
....
(2) *Admission by party-opponent.* The
statement is offered against a party and is

(A) his own statement, in either his individu-
al or a representative capacity or (B) a state-
ment of which he has manifested his
adoption or belief in its truth ....

621

a witness. *See State v. Whitman*, Me., 429
A.2d 203, 208–09 (1981) (concurring opinion); *State v. Wing*, Me., 426 A.2d 1375
(1981). The testimony of prison officials
established that the employer did not have
authority to permit Tompkins to remain
away from the prison beyond the time required by his work. Whether Tompkins
believed the employer had authority to give
him permission to travel to Piscataquis
County was a question for the fact finder.
We cannot say that a finding against Tompkins would be erroneous. According to the
defendant's testimony, the employer offered to explain Tompkins' absence by telling the prison officials that he was out
fishing. Such a subterfuge would be unnecessary if they believed that the employer
actually was authorized to give permission
for a trip unrelated to the narrow purpose
of the work release.

The defendant next contends that
the State could not show failure to return
because Tompkins' work release plan did
not specify a time when he had to return.
The defendant reads the statute selectively.
Section 755(1) makes illegal the intentional
failure to return from leave granted for a
specific purpose as well as for a limited
time. Tompkins' work release program
specified that he could be absent from the
prison only to work at his fishing job. The
scope of the work release did not include
trips to Piscataquis County.

The same reasoning undercuts Tompkins'
contention that the State could not prove
intentional failure to return because he was
arrested in Kokadjo before he was obligated to return. The criminal act occurred
when he failed to return to the prison as
soon as he finished work. This is not a
situation where the statute punishes only
failure to return within a specified period
and the arrest occurred before the period
elapsed. We therefore find the evidence to
be sufficient to support Tompkins' conviction.

The entry shall be:
Judgment of conviction affirmed.

All concurring.