**STATE of Maine**

v.

**Ricky BREWER.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1985.

Decided Oct. 31, 1985.

Janet T. Mills, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty., John W. Connelly, Law Student Intern (orally), Auburn, for plaintiff.

Isaacson, Hark & Epstein, Elliott L. Epstein (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Ricky Brewer appeals from a judgment of the Superior Court, Androscoggin County, affirming the judgment of the District Court, Livermore Falls, finding him guilty of operating a motor vehicle while under the influence of intoxicating liquor, in violation of 29 M.R.S.A. § 1312-B (Supp.1984–1985), and operating a motor vehicle while his license to operate had been suspended, in violation of 29 M.R.S.A. § 2184 (Supp. 1984–1985). We agree with the defendant's contention that the trial court erred in drawing inferences adverse to the defendant from the defendant's failure to call a witness, and vacate the judgment.

I

Virginia Curtis advised the sheriff's department by telephone that there was an accident on the Line Road in Leeds. The accident had occurred within approximately

20 minutes after she had traveled that road to reach her home. Within 5 minutes of the telephone call she went to the scene where she observed the defendant sitting alone behind the wheel in a pick-up truck. The motor was not running. When assured by the defendant that he was all right, she returned to her home to report this to the sheriff's office and was advised that a Maine State Police officer was on the way to the scene. Shortly after this telephone call the defendant came into the Curtis home.

On arrival at the scene, the trooper found the truck a few feet from the Line Road lodged too close to a tree to permit the left door to open. The trooper observed tracks on the right side of the truck near the door. There was no one in the truck when the trooper arrived, and the trooper was unable to determine how many people had been in the truck when the accident occurred. In the trooper's opinion someone could have left the truck by the passenger door, reached the road and left the scene of the accident. The only evidence as to the direction of the footprints was the trooper's testimony "there weren't any leading off into the woods." The trooper also observed a star-shaped crack high on the windshield to the left of the driver's seat and fragments of glass from the shattered sunroof on both the driver's and passenger's seats. From the registration in the vehicle, the trooper determined that Andrew Pratt was the owner.

At the Curtis home the trooper observed that the defendant had a cut under his chin and scratches on his face. His breath smelled of alcohol, and his eyes were red and glassy with the eyelids drooping. The defendant insisted he had not been driving the truck. A breath test was administered that gave a blood-alcohol level of 0.212 percent of weight.

In response to the question—"You didn't contact Andrew Pratt, to see whether he had been using the [truck] that night, did you?"—the trooper testified that when Pratt came to "pick up" the defendant, he stated he had not been using the truck, but had gone to bed and left the keys on the table in the apartment that he and the defendant shared.

At trial in the District Court the defendant freely admitted his intoxication and the suspension of his license, but denied driving the truck. The defendant testified that he and Pratt had been drinking together at a bar in Lewiston. They left together and got into Pratt's truck. Pratt was driving, and the defendant had gone to sleep and did not awaken until after the accident. At that time he was alone in the truck.

Neither party called Pratt as a witness. In his closing argument the prosecutor asked the court to draw an inference adverse to the defendant based on the defendant's failure to call Pratt. In making findings of fact the court stated:

> [T]he defendant, while on the stand, admitted that he was under the influence of alcohol or intoxicating liquor. . . . But the question . . . revolves around the issue of operation. . . . The Court does have the right to infer, that if someone else was operating this car, as the defendant contends, then that someone, Mr. Pratt, is the party who would be his— Brewer's best alibi witness. He's not here today, . . . obviously he's the witness who might clear him of this charge.

The court found the defendant guilty as charged, and the defendant appeals. The defendant contends on appeal, *inter alia,* that the evidence is insufficient to support the conviction and that the inference drawn by the trial court is improper.

## II

■ When, as here, a defendant challenges the sufficiency of the evidence, we will set the conviction aside only if no trier of fact rationally could have found the elements of the crime beyond a reasonable doubt. *State v. Reardon,* 486 A.2d 112, 117 (Me.1984). A conviction based on circumstantial evidence is not for that reason any less conclusive. *State v. Snow,* 464 A.2d 958, 961 (Me.1983); *State v. Crosby,*

456 A.2d 369, 370 (Me.1983). While the element of operation is a close question in this case, we cannot say on the facts presented that no trier of fact rationally could have found the elements of the crime beyond a reasonable doubt.

### III

■ The defendant contends that it was improper for the trial court to draw any inference of the defendant's guilt by reason of the defendant's failure to call Pratt as a witness. We agree.

The facts of this case require us to reexamine, in light of the Maine Rules of Evidence, the practice of drawing an inference from a party's failure to call a witness. Nine decades ago the United States Supreme Court characterized this practice in the following terms:

> [I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates a presumption that the testimony, if produced, would be unfavorable.

*Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). *See* 2 Wigmore, *Evidence* § 286 (J. Chadbourn rev. 1979). The missing-witness inference was linked historically with the concept that a party "vouched" for the credibility of a witness called by him and thus was unlikely to call a witness whose testimony might be adverse. *See State v. Fournier*, 267 A.2d 638, 639 (Me.1970); R. Field & P. Murray, *Maine Evidence* § 607.1 (1976). In effect, under the traditional practice the bare fact that a party did not call a witness who might have corroborated the party's testimony was treated as a relevant and admissible evidentiary fact [1] that permitted the opposing party to argue and the factfinder to infer that the missing witness's testimony would be unfavorable since oth-

erwise the party would have called the witness and vouched for him. *See State v. Whitman*, 429 A.2d 203, 208–209 (Me.1981) (Roberts, J., joined by Godfrey, J., concurring).

Any inference as to the content of testimony not given presents grave dangers of speculation and conjecture. *See* McCormick, *Law of Evidence* § 272 at 657 (E. Cleary ed. 1972). Accordingly, even when we have permitted the inference, we cautioned that it can involve serious risks of unfairness to the accused. *State v. Farris*, 420 A.2d 928, 935 n. 5 (Me.1980); *State v. Bey*, 342 A.2d 292, 298 (Me.1975). We have held the drawing of an inference improper when neither party can be said to have greater power to produce the witness. *Whitman*, 428 A.2d at 206–208; *Leek v. Cohen*, 141 Me. 18, 22, 38 A.2d 460, 462 (1944). *See also State v. Tompkins*, 431 A.2d 619, 620–21 (Me.1981) ("We do not suggest any inference from either party's failure to call the [escaped work-release prisoner's] employer as a witness").

■ The promulgation of the Maine Rules of Evidence removed any logical basis for the missing-witness inference by abolishing the practice of vouching. Rule 607 provides: "The credibility of a witness may be attacked by any party, including the party calling him." Under Rule 607 a party may call a witness, elicit the witness's testimony, and then freely attack the witness's credibility if the testimony proves to be adverse. *See* M.R.Evid. 607 Advisers' Note, *reprinted in* R. Field & P. Murray, *supra*, at 136; *State v. Price*, 202 Neb. 308, 275 N.W.2d 82, 90 (1979) (the identical Nebraska Rule 607 represents a repudiation "of the ancient and universally criticized rule that a party 'vouches' for the credibility of his own witnesses and may not impeach them"). Since neither party vouches for any witness's credibility, the failure of a party to call a witness cannot

---

1. Wigmore, for example, treats the missing-witness inference under the general heading of "Conduct as Evidence," 2 Wigmore, *Evidence* ch. 12 (J. Chadbourn rev. 1979), and the specific heading of "Failure to produce evidence, as indi-

cating unfavorable tenor of evidence." *Id.* § 285. McCormick treats the inference under the heading of "Admissions by Conduct." McCormick, *Law of Evidence* §§ 269–272 (E. Cleary ed. 1972).

be treated as an evidentiary fact that permits any inference as to the content of the testimony of that witness.

Also, the availability of modern discovery procedures sharply undercuts whatever utility the inference might once have possessed in compelling a reluctant party to identify witnesses who might be expected to testify to relevant evidence.[2] If a party violates his discovery obligation, the trial court has available to it a variety of sanctions.[3]

To allow the missing-witness inference in a criminal case is particularly inappropriate since it distorts the allocation of the burden of proving the defendant's guilt. The defendant is not obligated to present evidence on his own behalf. The inference may have the effect of requiring the defendant to produce evidence to rebut the inference. If he fails to do so, the missing-witness inference allows the state to create "evidence" from the defendant's failure to produce evidence. Such a result is impermissible. *State v. Rule*, 355 N.W.2d 496 (Minn. App.1984); *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197, 200 (1974); *State v. Jefferson*, 116 R.I. 124, 353 A.2d 190, 199 (1976); *State v. Taylor*, — R.I. —, 425 A.2d 1231, 1234–36 (1981); *State v. Posey*, 269 S.C. 500, 238 S.E.2d 176 (1977). *Accord Whitman*, 429 A.2d at 209 (Roberts, J., concurring, joined by Godfrey, J.). *See also State v. Cavness*, 46 Hawaii 470, 381

P.2d 685, 686–87 (1963) (inference improper, when the missing witness is an accomplice or codefendant); *accord Christensen v. State*, 274 Md. 133, 333 A.2d 45, 49 (1975); *Schrameck v. State*, 595 P.2d 799 (Okla.Crim.1979) (per curiam).[4]

The facts of the instant case amply illustrate the impropriety of the missing-witness inference in a criminal case. The defendant testified that Pratt had been drinking for a couple of hours and then drove the truck. If Pratt had testified to corroborate the defendant's story, Pratt might have subjected himself to criminal liability on charges of operating under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B (Supp.1984–1985) and leaving the scene of an accident, *id.* §§ 893–894 (1978). Thus the defendant's failure to call Pratt might as strongly suggest that Pratt's testimony would have been favorable to the defendant as it would suggest unfavorable testimony, but either inference would be speculative.

■ We hold, therefore, that in a criminal case the failure of a party to call a witness does not permit the opposing party to argue, or the factfinder to draw, any inference as to whether the witness's testimony would be favorable or unfavorable to either party. We overrule any prior decisions to the extent that they permitted such an inference.[5]

**2.** In criminal proceedings a broad scope of discovery is available to the defendant under M.R. Crim.P. 16, in particular the automatic discovery of exculpatory material and the discovery, pursuant to court order, of witnesses. M.R.Crim.P. 16(a)(1)(C), (c)(1). The State may discover an alibi defense and alibi witnesses. M.R.Crim.P. 16A(b). Further, both Rules 16(c)(1)(C) and 16A(b) provide that the fact that a witness's name appears on a list or notice as a witness for the State or the defendant and then is not called, shall not be commented on at trial.

There is no indication that the State made use of alibi discovery in the instant case.

**3.** When the State fails to comply with its discovery obligations in a criminal proceeding, the court may, *inter alia*, order the State to comply, grant the defendant a continuance, exclude evidence, or dismiss the charges with prejudice. M.R.Crim.P. 16(d). When the defendant fails to

comply with the notice of alibi provision, the court may take "appropriate action." M.R. Crim.P. 16A(b).

**4.** One commentator has argued that when a missing-witness inference is drawn against a criminal defendant, the constitutional privilege against self-incrimination is implicated since the effect is to imbue the defendant's conduct at trial with testimonial significance. Comment, *Drawing an Inference from the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Considerations*, 61 Calif.L.Rev. 1422, 1434–40 (1973).

**5.** *See State v. Farris*, 420 A.2d 928, 935 (Me. 1980); *State v. Hanks*, 397 A.2d 998, 1000 (Me. 1979); *State v. Cugliata*, 372 A.2d 1019, 1032, cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *State v. Bey*, 342 A.2d 292,

Accordingly, we hold that the trial court erred in drawing an inference of the defendant's guilt from the defendant's failure to call Pratt as a witness.

The entry is:

Judgment of the Superior Court vacated. Remanded to the Superior Court for remand to the District Court with instructions to vacate the judgment of conviction and for further proceedings consistent with the opinion herein.

All concurring.

298 (Me.1975); *State v. Pullen,* 266 A.2d 222, 228–29 (Me.1970); *State v. Silva,* 153 Me. 89, 101–02, 134 A.2d 628, 634 (1957); *State v.*

*O'Donnell,* 131 Me. 294, 303, 161 A. 802, 806 (1932).