**STATE of Maine**

v.

**Edward H. CLOUTIER.**

Supreme Judicial Court of Maine.

Argued June 17, 1993.

Decided July 28, 1993.

Donald W. Macomber (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for the State.

Peter B. Bickerman (orally), Lipman & Katz, P.A., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Edward H. Cloutier appeals from convictions of reckless or criminally negligent manslaughter, 17-A M.R.S.A. § 203(1)(A) (Supp.1989);[1] aggravated assault, 17-A M.R.S.A. § 208(1)(A) (1983);[2] reckless conduct with a dangerous weapon, 17-A M.R.S.A. §§ 211 & 1252(4) (1983);[3] and aggravated operating under the influence (OUI), 29 M.R.S.A. § 1312-B(1) & (2-A) (Supp.1989),[4] entered after a jury trial in the Superior Court (Hancock County, *Pierson, J.*). Cloutier asserts, *inter alia*, that the trial court violated his privilege against self-incrimination by allowing the State to question its own chemist about the availability of a blood sample for Cloutier to test and by asking Cloutier's expert whether he had been supplied a sample of Cloutier's blood and that the trial court abused its discretion by preventing Cloutier from impeaching one of the State's witness with a conviction resulting from a juvenile adjudication.

The facts, as presented at trial, may be briefly summarized as follows: On July 21, 1990, Cloutier consumed a number of alcoholic beverages in the afternoon and evening at the Chuck Wagon restaurant in Livermore Falls. Later that night, around midnight, Cloutier's vehicle collided with three other vehicles. One person was killed and several others suffered substantial injuries. Investigations after the accident revealed that Cloutier's blood-alcohol level at 1:39 AM was 0.19% and was estimated to have been between 0.21% to 0.24% at the time of the accident.

Cloutier was indicted on the above-mentioned charges and, after a jury trial in the Superior Court, guilty verdicts were returned on all four counts. Cloutier appeals.

### I.

During the State's examination of its own chemist, the following exchange took place:

Q. ... [A]re both blood samples still at the Public Health Lab?

A. Just one tube is still at the Public Health Lab.

Q. ... [D]id you give a sample of blood to someone?

[Cloutier's objection overruled.]

A. ... I did give a tube of blood to someone, yes.

Q. Okay. Was it a representative of the defendant?

A. Yes, it was.

---

1. 17-A M.R.S.A. § 203 provides that "A person is guilty of manslaughter if that person ... [r]ecklessly, or with criminal negligence, causes the death of another human being."

2. 17-A M.R.S.A. § 208(1)(A) provides that "A person is guilty of aggravated assault if he ... recklessly causes ... [s]erious bodily injury to another."

3. 17-A M.R.S.A. § 211 provides that "[a] person is guilty of reckless conduct if he recklessly creates a substantial risk of serious bodily injury to another person." Section 211 also provides that reckless conduct is a Class D crime. 17-A M.R.S.A. § 1252(4) provides that, "If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be...."

4. 29 M.R.S.A. § 1312-B(1) provides that "[a] person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle ... [w]hile under the influence of intoxicating liquor ... or ... [w]hile having 0.08% or more by weight of alcohol in his blood." Section 1312-B(2-A) adds that "[i]f the State pleads and proves that, while operating a motor vehicle in violation of this section, the actor in fact caused serious bodily injury ... to another person or in fact caused the death of another person, the sentencing class for the offense in subsection 1 is a Class C crime."

The State again mentioned Cloutier's blood samples during its cross-examination of Cloutier's chemist:

Q. And did the defense send you any blood test to be done with Mr. Cloutier's name on it.

A. No, ... ma'am.

After this exchange, Cloutier moved for a mistrial. The trial court denied this motion.

 Cloutier argues that his privilege against self-incrimination was implicated when the trial court allowed the State to introduce evidence about the availability of the blood sample and whether Cloutier's expert had tested the sample. Cloutier relies on our decision in *State v. Brewer*, 505 A.2d 774 (Me.1985) in which we held that:

[I]n a criminal case the failure of a party to call a witness does not permit the opposing party to argue, or the factfinder to draw, any inferences as to whether the witness's testimony would be favorable or unfavorable to either party.

*Id.* at 777. We explained:

To allow the missing-witness inference in a criminal case is particularly inappropriate since it distorts the allocation of the burden of proving defendant's guilt. The defendant is not obligated to present evidence on his own behalf. The inference may have the effect of requiring the defendant to produce evidence to rebut the inference. If he fails to do so, the missing-witness inference allows the state to create "evidence" from the defendant's failure to produce evidence. Such a result is impermissible.

*Id.* Questions such as those asked by the State in this case are better avoided; the possibility exists that such questioning could create a missing-test-result inference similar to the missing-witness inference created in *Brewer*. Unlike *Brewer*, however, the State here did not ask the jury, during its closing argument, to draw an adverse inference based on the defendant's failure to introduce evidence of his blood alcohol content. *State v. Brewer*, 505 A.2d at 775. In fact, during its closing argument, the State made absolutely no comment on the availability of the blood sample and Cloutier's failure to introduce any blood test results. Nor did the trial court suggest to the jury that such an inference was permissible; in fact, the trial court instructed the jury that:

The burden is always upon the State to prove each element of the offense charged beyond a reasonable doubt, and this burden remains on the State throughout the case. A defendant is not required to prove his innocence or *produce any evidence*, and no inferences whatsoever may be drawn from the election of the defendant not to testify.

(Emphasis added). Given the circumstances of this case, we conclude that *no impermissible inference was created*.

## II.

At the trial, the State introduced the testimony of a former employee of the Chuck Wagon restaurant. During a recess in the witness's testimony, Cloutier discovered that the witness had been convicted of gross sexual misconduct in a closed proceeding six years earlier in Massachusetts when he was 14 years old. Cloutier wanted to introduce this conviction in evidence to impeach the witness but the trial court refused to allow it.

 The impeachment of a witness with a juvenile adjudication is governed by M.R.Evid. 609(d) which provides that:

Evidence of a juvenile adjudication in [a] proceeding open to the public may be admitted under this rule. Evidence of a juvenile adjudication in a proceeding from which the public was excluded may be admitted under this rule only in another juvenile proceeding from which the public is excluded.

M.R.Evid. 609(d). Cloutier asserts that, if the proceeding had been held in Maine it would have been open to the public and the witness's conviction would have been admissible pursuant to Rule 609(d). He concludes that the trial court, therefore, abused its discretion by refusing to admit the witness's conviction. The language of Rule 609(d) leads us to conclude that, since

the proceeding in which the witness was convicted was not public, the witness's conviction was not admissible in this public trial pursuant to Rule 609(d). *See* M.R.Evid. 609(d).

We also reject Cloutier's contention that if the witness's conviction is barred by Rule 609, then the rule is unconstitutional as applied. Although we acknowledge that even if prohibited by M.R.Evid. 609(d), "a prior juvenile adjudication may be admissible to impeach the credibility of a witness if it demonstrates a strong tendency for bias," *State v. Ouellette*, 544 A.2d 761, 763 (Me.1988) (citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)), the witness's adjudication for gross sexual misconduct at age 14 demonstrates no strong tendency for bias against Cloutier.

Cloutier's other contentions merit no discussion.

The entry is:

Judgment affirmed.

All concurring.