## State of Vermont v. Brian E. Tahair

[772 A.2d 1079]

No. 00-076

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 2, 2001

*Lauren Bowerman*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Skoglund, J.** Defendant appeals from a conviction, based on a jury verdict, of driving under the influence of intoxicating liquor, in violation of 23 V.S.A. § 1201(a)(2). He contends the trial court committed plain error in instructing the jury that it could infer from defendant's failure to call certain witnesses that their testimony would have been harmful to defendant. We conclude that the so-called "missing witness" instruction has outlived its usefulness in criminal trials, and should be abandoned. We also conclude, however, that its application in this case did not deprive defendant of any substantial rights or unfairly prejudice the jury deliberations. Accordingly, we affirm the judgment.

The record evidence was as follows. On the afternoon of July 6, 1999, Burlington police officers Bean and Ward responded to a domestic assault complaint on Riverside Avenue in front of Corrigan's Auto Repair. Upon their arrival, the officers observed a man and woman, later identified as defendant and Patricia Sartwell, in the general vicinity of a maroon Chevrolet Cavalier registered to defendant. The vehicle's windows were broken, glass was scattered on the ground, and the officers later observed that the key was broken off in the ignition.

Officer Bean spoke with Sartwell while Officer Ward met with defendant. Bean observed that Sartwell was crying and had scrapes on her arm. The officer testified that he asked Sartwell what had happened, and she informed him that she had been walking home from work when a vehicle passed which she recognized. Defendant and another woman were in the car. The car stopped about 100 to 200 feet

past Sartwell, and a woman got out and fled. Sartwell told the officer that defendant then drove back to where she was standing. Although Sartwell acknowledged that she was angry about the other woman, and that she had smashed defendant's car windows, she also told the officer that she did not want to get defendant in trouble.

Officer Ward testified that, while speaking with defendant, he observed that defendant smelled of alcohol, and that his eyes were dilated.[1] The officer testified that defendant claimed to be a passenger in the car driven by a woman named Susan Olsaver. Defendant told the officer that Olsaver pulled over after passing Sartwell on the road, and left the scene because Sartwell was obviously angry. Defendant then returned to speak with Sartwell, who used a baseball bat to smash his car windows. Defendant did not indicate who drove his car back to Sartwell after Olsaver left.

Officer Bean also spoke with defendant at the scene. According to Bean, defendant initially admitted that he had been driving the Cavalier with a drink in his hand when he passed Sartwell, but later changed his story to indicate that the woman in the car, Olsaver, was the driver. When Bean asked him who drove the car back to Sartwell after Olsaver left, he said, "You figure it out." According to Bean, defendant never identified anyone named "Kevin" as the driver, and never mentioned anyone named "Gerald."

A motorist who was driving on Riverside Avenue at the time testified that she observed a vehicle stopped along the side of the road, and saw a woman with something in her hand smashing out the windows. The motorist also observed a man who was standing near the driver's door of the vehicle walk to the rear of the car, and moments later saw the man and woman facing each other and gesturing as though they were arguing.

The defense claimed at trial that an individual named Kevin Whitcomb was actually driving defendant's vehicle during the events in question, and that defendant was following in a different car driven by one Gerald Barber. Sartwell testified for the defense. She admitted that she saw defendant's car pass, recognized it as defendant's, became angry, and smashed its windows. She denied, however, that defendant was the driver. She indicated instead that she did not know the man who was driving the car, although she recognized him as someone she had seen with defendant. She could not explain where the man went

---

[1] Defendant was eventually arrested for DUI and transported to the police station for processing. A breath test revealed a blood alcohol concentration of .168 percent.

after the police arrived. She acknowledged informing the police at the scene that defendant had driven the car back to talk with her, but claimed that she had lied to them because she was angry with defendant and wanted to get him in trouble.

Defendant testified in his own behalf. He claimed that several days before the incident he had loaned his car to a friend named Kevin Whitcomb. He stated that, on the date in question, he and Whitcomb and Susan Olsaver and another friend named Gerald Barber all left another friend's house in Burlington. According to defendant, he was in a car driven by Barber, and Whitcomb drove off in defendant's car with Olsaver. While driving down Riverside Avenue with Barber, defendant observed Olsaver running up the road. They stopped, and Olsaver informed defendant that Sartwell was upset and was smashing his car windows. Barber then dropped off defendant at his car and left. Shortly thereafter, the police arrived. Defendant claimed that he informed the officers that a friend had been driving his car. He denied ever having told officer Bean that he was the driver. He also testified that he later attempted, without success, to locate Whitcomb and Barber.

At trial, neither the State nor defendant produced Whitcomb, Barber, or Olsaver as a witness. The trial court, on its own initiative, gave a missing witness instruction to the jury. The instruction provided as follows:

> There was evidence that there were witnesses to the incident in question who were not called on to testify. These witnesses presumably could have corroborated the other defense witnesses. I instruct you that you may infer from the failure to call the witnesses that the testimony that would have been offered by those witnesses would have in some way been harmful to the defendant's case. However, I would caution you that there are many possible reasons why a particular witness would not be called to trial. The party that didn't call the witness is entitled to explain the reason to you. If you find that there was another explanation for the witness's failure to be called, then I instruct you that you should not make any inference concerning the potential harm or benefit of his or her testimony.

Although defense counsel objected to the instruction at the charge conference, he failed to renew his objection after the instruction was delivered to the jury. Accordingly, we review the claim on appeal for

plain error. See *State v. Carpenter*, 170 Vt. 370, 374, 749 A.2d 1137, 1139 (2000) (where claimed instructional error was not properly preserved after charge, review for plain error was appropriate standard); *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992) (failure to object after instruction is given to jury is considered waiver of any error even if substance of objection is made known before jury charge).

For more than one hundred years, this Court — in conformity with most other state and federal courts — has approved a "missing witness" instruction to the effect that the jury "may draw an inference against a party who fails to call a witness whose testimony would apparently be useful to that party." *State v. Trombly*, 148 Vt. 293, 304, 532 A.2d 963, 970 (1987); see *Seward v. Garlin*, 33 Vt. 583, 592 (1861) (where "ordinary and natural course" would be to introduce witness's testimony, party's failure to do so leads to "irresistible conclusion . . . that he feared at least the witness would not support his other testimony"); *State v. Fitzgerald*, 68 Vt. 125, 127, 34 A. 429, 429 (1896) (adverse inference may be drawn from failure to produce witness); *State v. Smith*, 71 Vt. 331, 333-34, 45 A. 219, 220 (1899) (same); *Choiniere v. Sulikowski*, 126 Vt. 274, 279, 229 A.2d 305, 309 (1967) (same).

The classic formulation of the rule was stated by the United States Supreme Court in *Graves v. United States*, 150 U.S. 118, 121 (1893), as follows: "The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Although *Graves* referred to the rule as creating a "presumption," it is generally characterized in more recent case law as authorizing only a permissive inference. See *Choiniere*, 126 Vt. at 279, 229 A.2d at 309; *State v. Francis*, 669 S.W.2d 85, 88 (Tenn. 1984).[2] Most courts caution, as well, that "[a] missing-witness instruction is only proper if the inference to be drawn is a 'natural and reasonable one.' " *Trombly*, 148 Vt. at 304, 532 A.2d at 970 (quoting *United States v. Bramble*, 680 F.2d 590, 592 (9th Cir. 1982)); see also *Burgess v. United*

---

[2] "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). The trial court's instruction here clearly fell within the latter category; it allowed the jury to draw a negative inference from the witness's failure to testify, but did not require such an inference.

*States*, 440 F.2d 226, 237 (D.C. Cir. 1970) (missing witness instruction proper only when it can be said "with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony"); *Wheatley v. State*, 465 A.2d 1110, 1111 (Del. 1983) ("A missing-witness inference is permissible only where it would be 'natural' for the party to produce the witness if his testimony would be favorable.").

The last several decades have witnessed a growing wariness among courts about the wisdom of the missing witness rule, however, and a number of courts have rejected it outright. See *State v. Malave*, 737 A.2d 442, 447 (Conn. 1999) (concluding that "the rule should be abandoned in criminal cases"); *State v. Brewer*, 505 A.2d 774, 777 (Me. 1985) (holding that "in a criminal case the failure of a party to call a witness does not permit the opposing party to argue, or the factfinder to draw, any inference as to whether the witness's testimony would be favorable or unfavorable to either party"); *State v. Caron*, 218 N.W.2d 197, 200 (Minn. 1974) (forbidding comment upon defendant's failure to call witnesses); *Henderson v. State*, 367 So. 2d 1366, 1368 (Miss. 1979) (holding that "an instruction on either party's failure to call a witness in criminal cases should not be given"); *State v. Jefferson*, 353 A.2d 190, 199 (R.I. 1976) (any comment upon defendant's failure to produce witnesses "was improper"), *abrogated on other grounds by State v. Caruolo*, 524 A.2d 575, 581 (R.I. 1987); *State v. Hammond*, 242 S.E.2d 411, 416 (S.C. 1978) (observing that "such a charge has no proper place in the judge's statement of the law"); *Russell v. Commonwealth*, 223 S.E.2d 877, 879 (Va. 1976) (concluding that "[w]e do not believe a missing-witness presumption instruction has any place in a criminal case"); see also *Dent v. United States*, 404 A.2d 165, 170 (D.C. 1979) (allowing instruction, but noting that "[c]ourts have recognized several dangers inherent in allowing the jury to draw an inference adverse to a party from the absence of evidence"); *Taylor v. State*, 676 N.E.2d 1044, 1046 (Ind. 1997) (observing that "[t]he tendered instruction, commonly referred to as a missing witness instruction, is not generally favored in Indiana"); *Crosser v. Iowa Dep't of Pub. Safety*, 240 N.W.2d 682, 685 (Iowa 1976) (noting that "[t]he inference should be invoked prudently" and with caution); *Davis v. State*, 633 A.2d 867, 879 (Md. 1993) (trial court "should be especially cautious" in giving missing witness instruction); *Commonwealth v. Schatvet*, 499 N.E.2d 1208, 1211 (Mass. App. Ct. 1986) (holding that, "[b]ecause the inference, when it is made, can have a seriously adverse effect on the noncalling party . . . it should be invited only in clear cases, and with caution"); *Francis*, 669

S.W.2d at 89 (noting that "several dangers inherent in the operation of the missing witness rule" require that it be strictly construed and used with caution).

Courts and commentators have identified several reasons for restricting or even rejecting the rule. First, to the extent that the rule derived from the venerable common law practice of "vouching," which prohibited parties from impeaching their own witnesses, its rationale has been undermined by the abandonment of the voucher rule in this and most other states. See V.R.E. 607 ("The credibility of a witness may be attacked by any party, including the party calling him."). As the court explained in *Brewer*, "[s]ince neither party vouches for any witness's credibility, the failure of a party to call a witness cannot be treated as an evidentiary fact that permits any inference as to the content of the testimony of that witness." 505 A.2d at 776-77; see also *Malave*, 737 A.2d at 448-49 (noting that logical basis for missing witness instruction has been undermined by abandonment of voucher rule).

Many have also noted that the availability of modern discovery procedures has undermined "whatever utility the inference might once have possessed in compelling a reluctant party to identify witnesses who might be expected to testify to relevant evidence." *Brewer*, 505 A.2d at 777; see also *Malave*, 737 A.2d at 447 ("the need for the missing witness instruction has been obviated, to a significant degree, by the advent of modern discovery procedures, which have made it easier for both the state and the defendant to ascertain the substance of the testimony of prospective witnesses"); 2 J. Strong, McCormick on Evidence § 264, at 176-77 (5th ed. 1999) ("[T]he availability of modern discovery and other disclosure procedures serves to diminish both its justification and the need for the inference."). Where courts once "used the missing witness doctrine to compel parties to produce witnesses at trial," C. Edwards, *Speak of the Missing Witness, and Surely He Shall Appear: The Missing Witness Doctrine and the Constitutional Rights of Criminal Defendants*, 67 Wash. L. Rev. 691, 698 (1992), today our rules provide ample opportunity to identify the witnesses a party intends to call at trial, as well as the substance of their testimony. See V.R.Cr.P. 15-17.1.

Apart from its diminished utility as a discovery tool, the missing witness rule has also been sharply criticized for its "potential inaccuracy and unfairness." R. Stier, *Revisiting the Missing Witness Inference — Quieting the Loud Voice from the Empty Chair*, 44 Md. L. Rev. 137, 151 (1985). As noted, the basis of the rule is that, where a

party fails to call an available witness whose testimony would be expected to be favorable, a "natural" inference arises that the witness would have given testimony unfavorable to that party. See *Burgess*, 440 F.2d at 237. Critics have noted, however, that "the decision not to call the witness may be based upon many facts besides the party's fear that weaknesses in the case will be exposed if testimony is heard." Stier, *supra*, at 145; see also *Malave*, 737 A.2d at 449 ("there are many reasons why a party may choose to refrain from calling a witness that have little or nothing to do with the substance of the witness' testimony"); Edwards, *supra*, at 706 ("Simply as a matter of legitimate trial tactics, criminal defendants may choose not to call witnesses for many reasons unrelated to guilt or innocence.").

As the court in *United States v. Busic*, 587 F.2d 577, 586 (3d Cir. 1978), *reversed on other grounds by Busic v. United States*, 446 U.S. 398 (1980), recognizing the "weakness of the missing witness inference," observed:

> Every experienced trial lawyer knows that the decision to call a witness often turns on factors which have little to do with the actual content of his testimony. Considerations of cumulation and jury fatigue may preclude calling a witness who is entirely helpful; calculations that a witness may help a lot but hurt a little may compel restraint when counsel believes that his burden is already met. Then, too, questions of demeanor and credibility, hostility, and the like may influence the [party] not to produce a witness whose testimony might be entirely harmful to the [other party].

Thus, while a negative inference from the failure to call a witness might seem "natural" to a jury, there may — in reality — be many reasons for the decision unrelated to the content of the testimony. Accordingly, the Connecticut Supreme Court recently concluded that any inference to be drawn from the failure to call a witness is so fraught with "conjecture" and "ambiguity" that the instruction is unsupportable. *Malave*, 737 A.2d at 450.

Of course, a jury might "naturally" infer that the absent witness's testimony would have been unfavorable even without an instruction from the court. There is a difference, however, between what the jury might infer on its own, and what it might conclude "when the absence of certain evidence is highlighted by . . . the judge's instructions." J. McDonald, *Drawing an Inference from the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Con-*

*siderations*, 61 Cal. L. Rev. 1422, 1430 (1973). Thus, many courts have noted the danger that the missing witness instruction, "which in effect creates evidence from nonevidence, may add a fictitious weight to one side of the case . . . by giving the missing witness undeserved significance." *Dent*, 404 A.2d at 171; see also *Davis*, 633 A.2d at 879 (trial court's missing witness instruction, in contrast to prosecutor's reference to missing witness in closing argument, "creat[es] the danger that the jury may give the inference undue weight"); *Francis*, 669 S.W.2d at 89 (same); *Henderson*, 367 So. 2d at 1368 (rejecting missing witness instruction on ground that it "place[s] too much emphasis on such permissible inference and tend[s] to cause juries to decide cases on the lack of testimony rather than direct testimony").[3]

Finally, many courts and commentators have noted that the instruction raises constitutional concerns by implying that the defendant has some obligation to produce evidence, thus diminishing the State's burden of proving the defendant's guilt beyond a reasonable doubt. See *Brewer*, 505 A.2d at 777 ("The inference may have the effect of requiring the defendant to produce evidence to rebut the inference."); *Caron*, 218 N.W.2d at 200 (such comment "might suggest to the jury that defendant has some duty to produce witnesses or that he bears some burden of proof"); *Jefferson*, 353 A.2d at 199 (same); *Russell*, 223 S.E.2d at 879 (instruction could "weaken, if not neutralize, the presumption of innocence"). Although we do not hold that the instruction necessarily shifts the burden of proof to the defendant, see *People v. Rodriguez*, 341 N.E.2d 231, 233 (N.Y. 1975) ("respected authorities make clear that, so long as comment or instruction on the absence of the witness is unaccompanied by [comment] on the accused's personal failure to testify, no constitutional right is infringed"), we do agree that the constitutional argument supports the conclusion that, as a matter of sound judicial policy, the instruction is no longer warranted in criminal cases. See *Malave*, 737 A.2d at 451 (acknowledging that constitutional argument supports conclusion that, "as a policy matter," the instruction should be abandoned).

██ In sum, we hold that the missing witness instruction should no longer be given in criminal cases. Accordingly, we conclude that the

---

[3] This is not to suggest that the inference is so lacking in reason as to violate due process. See *Francis*, 471 U.S. at 314-15 (permissive inference violates Due Process Clause only if suggested conclusion defies "reason and common sense"). We conclude only that, as a prudential matter, the instruction overemphasizes its usefulness to the jury.

trial court erred in so instructing here. The facts do not present, and therefore we do not decide, the related question of whether counsel — as opposed to the court — may comment upon an opposing party's failure to call a witness, nor do we consider whether the missing witness instruction remains viable in a civil proceeding.

██ Although we conclude that the missing witness instruction should no longer be given in criminal cases, we do not believe that the charge to the jury in this case warrants a new trial. As noted, defendant did not preserve his objection to the charge. Accordingly, we review only for plain error, which exists "only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993). "The error must not only affect substantial rights, but also have an unfair prejudicial impact on the jury's deliberations." *Carpenter*, 170 Vt. at 375, 749 A.2d at 1140.

The record here demonstrates that there was ample evidence to support the jury's verdict without any reliance on the missing witness permissive inference. Indeed, the evidence against defendant was compelling. Officer Bean testified that Sartwell identified defendant as the driver at the scene. Sartwell readily acknowledged, as well, that she had identified defendant as the driver in her statement to the officer. In addition, officer Bean testified that defendant himself admitted driving the car at the scene, and only subsequently changed his story to claim that Susan Olsaver was the driver. He could not explain, however, who drove the car after Olsaver left, telling the officer, "You figure it out." Neither of the investigating officers recalled either Sartwell or defendant identifying a male named "Kevin" as the driver. A passing motorist identified only two persons at the scene, a man and a woman, whom she described as arguing. The defense theory, in contrast, was riddled with inconsistencies; there was no adequate explanation for their failure to mention either Kevin Whitcomb or Gerald Barber to the officers at the time of the incident, and Sartwell acknowledged on the stand that she and defendant had been dating at the time of the incident, and were still together at the time of trial. Thus, her belated claim that defendant was not the driver was implausible and unpersuasive. We thus perceive no miscarriage of justice in the verdict. See *id.* at 375, 749 A.2d at 1140 (no plain error demonstrated where jury did not need to rely on permissive inference of intoxication in view of other credible evidence supporting verdict).

■ Moreover, as noted, the missing witness instruction did not impermissibly shift the burden of proof to defendant. The jury was allowed, but was not required, to infer that the absent witness's testimony would be harmful. The court also correctly instructed the jury on the State's burden of proof, explaining that the burden "remains on the State throughout the trial and never shifts to the defendant." Thus, considered in light of the record evidence as a whole, and the instructions in their entirety, we cannot conclude that the instruction had "an unfair prejudicial impact on the jury's deliberations." *Pelican*, 160 Vt. at 538, 632 A.2d at 26; see also *State v. Forant*, 168 Vt. 217, 220, 719 A.2d 399, 401 (1998) (when determining if plain error exists in the content of jury instructions, we review instructions in their entirety).

*Affirmed.*