MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2013 ME 38
Docket:      Aro-12-64
Argued:      February 12, 2013
Decided:     March 28, 2013

Panel:      SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

STATE OF MAINE

v.

RICHARD A. LARSEN JR.

SAUFLEY, C.J.

[¶1]    We are called upon here to determine whether an out-of-court statement that incriminates both the nontestifying declarant and a defendant in a criminal trial is admissible in the defendant's trial when the declarant asserts the privilege against self-incrimination and is unavailable to testify.

[¶2]    Richard A. Larsen Jr. appeals from a judgment entered by the trial court (*Hunter, J.*) after a jury found him guilty of burglary (Class C), 17-A M.R.S. § 401(1)(A) (2012), and theft by unauthorized taking or transfer (Class C), 17-A M.R.S. § 353(1)(B)(4) (2012), for taking building materials worth more than $1,000 from the Presque Isle Snowmobile Club without authorization.  During Larsen's trial, Larsen's adult son, who had told the police that he helped his father take the materials from the Club, asserted his Fifth Amendment privilege against self-incrimination and refused to testify.  *See* U.S. Const. amend. V.  Larsen

2

contends that the court erred when it admitted redacted versions of two statements that Larsen's son had earlier made to police that incriminated both Larsen and his son.[1] Because we conclude that the court erred in admitting the statements of Larsen's son and that the error was not harmless, we vacate the judgment of conviction.

## I. BACKGROUND

[¶3] In August 2009, Larry Allen, a contractor who had been hired to build a new clubhouse for the Presque Isle Snowmobile Club, died before the project was finished. Richard A. Larsen Jr., who had been Allen's employee, was not hired to complete the construction; instead, the Club hired another construction company.

[¶4] On September 8, 2009, employees of the new construction company alerted the Club that building supplies and materials worth a total of $11,000 or more were missing. There was no evidence of forced entry. Larsen had been in possession of a key to the groomer building in which these items had been stored. About ten people had keys to the building, and Larsen was the only key holder who was not a Club member. At some point, many of the missing supplies were found dumped and scattered along a road in the Beaver Brook area.

---

[1] Larsen also argues that he did not have effective assistance of counsel. We do not consider this argument on direct appeal. See 15 M.R.S. § 2122 (2012); State v. Ali, 2011 ME 122, ¶ 20, 32 A.3d 1019. "[S]uch claims will only be considered after a certificate of probable cause has been issued following a hearing on a post-conviction petition." Ali, 2011 ME 122, ¶ 20, 32 A.3d 1019.

[¶5]  In October 2010, Larsen was charged by complaint with burglary (Class C), 17-A M.R.S. § 401(1)(A), and theft by unauthorized taking or transfer (Class C), 17-A M.R.S. § 353(1)(B)(4).  In January 2011, he was indicted for those two crimes and two additional crimes of which he was ultimately acquitted: tampering with a witness or informant (Class C), 17-A M.R.S. § 454(1)(A)(2) (2012), and violation of a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2012).

[¶6]  Larsen pleaded not guilty to all of the charges, and he was tried alone before a jury in January 2012.  The jury heard testimony from officers of the Club, the supplier of the building materials for the new clubhouse, several of Larsen's relatives and acquaintances, a friend on whose property Larsen had stored a variety of materials, the man who discovered the discarded building materials, law enforcement officers, and a Department of Corrections sergeant who testified about Larsen's son's telephone and mail correspondence while the son was in jail.

[¶7]  Although Larsen's son was called as a witness at the trial, he invoked his Fifth Amendment privilege against self-incrimination and refused to testify. The State then moved for the admission of two written statements that the son had signed, after being interviewed by the Presque Isle Police, as statements against the son's penal interest pursuant to M.R. Evid. 804(b)(3).  Larsen objected that the admission of those statements would impinge on his constitutional right to confront

4

and cross-examine an adverse witness. The court admitted redacted versions of the statements, which were read into the record by the officer who took the statements.[2]

[¶8]  As redacted, the son's statements did not mention Larsen by name, but they included a detailed account of how Larsen's son and a "person" had taken the building supplies from the Club. The son's statements explained in detail how he and that person met at what had been Allen's garage, drove to the Club building site in the person's truck, used a key to enter a Club building, carried away building supplies from that building in the truck, and took the supplies to the person's friend's house for storage.

[¶9]  The jury considered the son's statements in combination with additional evidence that Larsen's son had received a phone call and absented himself from his other family members and girlfriend on the night of August 28, 2009; that Larsen had told his daughter, his ex-wife, and his son's girlfriend that he had been involved in stealing windows and storing them on his friend's property; that Larsen had in fact stored items on that friend's property; that Larsen had threatened to slit his ex-wife's throat if she turned him in; and that Larsen had told his son's girlfriend that he would kill anybody who ratted on him.

---

[2]  The prosecutor thrice mistakenly referred to Larsen's son as "the defendant" during direct examination of the officer who authenticated the son's statements and read them, as redacted, to the jury. Larsen did not object, and this misstatement was not corrected.

[¶10]  The jury found Larsen guilty of burglary and theft, and not guilty of tampering with a witness or violating a condition of bail.  For the burglary conviction, the court sentenced Larsen to thirty-six months in prison, all but eighteen months suspended, with two years of probation that included conditions that Larsen have no contact with his ex-wife, her husband, his son's girlfriend, or his daughter.  The court also ordered him to pay $11,044.58 to the Club in restitution and $25 to the victims' compensation fund.  For the theft conviction, the court imposed a concurrent sentence of eighteen months in prison and ordered Larsen to pay $25 to the victims' compensation fund.  Larsen timely appealed.  *See* 15 M.R.S. § 2115 (2012); M.R. App. P. 2.

## II.  DISCUSSION

[¶11]  The State argues that Larsen's son's statements were admissible as statements against interest, *see* M.R. Evid. 804(b)(3), and cites to our opinion in *State v. Platt*, 1997 ME 229, 704 A.2d 370, in support of its position that the redaction of the statements effectively prevented any constitutional violations.  The State also argues that, if there was any error, that error was harmless.  Because *Platt* may have led to confusion regarding the admissibility of such statements, we address both the evidentiary issue and the constitutional issue in detail.

6

A.      Admissibility of Statements Against Interest

[¶12]  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  M.R. Evid. 801(c).  In other words, hearsay is an out-of-court statement offered at trial to prove a relevant fact.  *See id.*  Subject to certain exceptions, hearsay is inadmissible in a court proceeding.  M.R. Evid. 802.  One of the exceptions to this rule applies when a party offers in evidence certain statements of an unavailable witness when those statements are against the declarant's interest:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness [as provided in M.R. Evid. 804(a)]:
>
> . . . .
>
> (3) *Statement against interest.*  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.  A statement tending to expose the declarant to criminal liability and offered in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. *A statement or confession offered against the accused in a criminal case, made by a defendant or other person implicating both the declarant and the accused, is not within this exception.*

M.R. Evid. 804(b) (emphasis added).

[¶13]  Here, the statements of Larsen's son were not made in court and were offered to prove the truth of the matters that he asserted in those statements: that he and another person met on property that had been owned by Larsen's former employer, used a key to enter a Club building, took away materials from that building, and stored them at the home of Larsen's friend.  *See* M.R. Evid. 801(c). Accordingly, the statements constituted hearsay and were not admissible unless an exception to the hearsay rule applied.  *See* M.R. Evid. 802.

[¶14]  To determine whether the statement-against-interest exception to the hearsay rule could apply, the threshold question is whether Larsen's son was unavailable as a witness.  *See* M.R. Evid. 804(a), (b).  On this point, the parties do not dispute that, because he asserted his privilege against self-incrimination, *see* U.S. Const. amend. V, Larsen's son was unavailable for purposes of this hearsay exception, *see* M.R. Evid. 804(a)(1) ("'Unavailability as a witness' includes [a] situation in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement.").

[¶15]  Next, we consider whether the statement-against-interest exception applies in the circumstances of this case.  The plain language of the exception provides that the exception does not apply if, in a criminal case, the statement implicates both the unavailable declarant and the defendant: "A statement or

confession offered against the accused in a criminal case, made by a[n] . . . other person implicating both the declarant and the accused, is not within this exception." M.R. Evid. 804(b)(3). The proffered statements of Larsen's son fall directly within that description. Thus, the statements were not admissible against Larsen pursuant to the Maine Rules of Evidence. *See State v. Guyette*, 2012 ME 9, ¶ 17, 36 A.3d 916.

[¶16] Because Larsen did not draw the court's attention to this evidentiary basis for exclusion, however, and instead argued that the admission of the statements would violate his constitutional right of confrontation, *see Bruton v. United States*, 391 U.S. 123 (1968), we next address the constitutional considerations that formed the basis for the court's evidentiary ruling.

B. Constitutional Right of Confrontation

[¶17] "We review constitutional interpretations de novo." *State v. Mitchell*, 2010 ME 73, ¶ 41, 4 A.3d 478. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Me. Const. art. I, § 6.

[¶18]  In specific circumstances, when two or more defendants are being tried together, a nontestifying co-defendant's redacted confession[3] may be admitted in a joint trial.  *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Such a confession is admissible *against that co-defendant* because it is not hearsay as to the co-defendant.  *See* M.R. Evid. 801(d)(2)(A) (providing that a statement is not hearsay if "[t]he statement is offered against a party and is the party's own statement").  In addition, because the statement is the co-defendant's own statement, there are no Confrontation Clause concerns.  *See* U.S. Const. amend. VI.

[¶19]  A nontestifying co-defendant's confession is *not* admissible against the nondeclarant defendant, however, even in a joint trial.  *See Richardson*, 481 U.S. at 211; *Bruton*, 391 U.S. at 135-37.[4]  The redaction undertaken in a joint trial is specifically designed to ensure that the content of that confession relates only to the defendant who made the confession.  *See Richardson*, 481 U.S. at 211.  Accordingly, even if redacted, a confession of a witness who invokes the Fifth

---

[3]  To be admissible in a joint trial, the court must provide a limiting instruction, and the confession must be carefully redacted to remove not only any identification of the jointly tried nondeclarant defendant but also any reference to that person's existence.  *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  The redaction in these instances cannot be obvious or suggestive to the jury; substituting the defendant's name with the word "deleted," for instance, too strongly implicates a defendant.  *Gray v. Maryland*, 523 U.S. 185, 192-95 (1998); *see also State v. Boucher*, 1998 ME 209, ¶¶ 15-16, 718 A.2d 1092.

[4]  As the United States Supreme Court emphasized in *Bruton v. United States*, a hearsay statement inculpating a defendant is not ordinarily admissible pursuant to traditional rules of evidence.  391 U.S. 123, 128 n.3 (1968).  Thus, the problem created by the admission of such a statement will arise only when the government offers the statement in a joint trial against the co-defendant who made the statement.  *Id.*

Amendment privilege against self-incrimination and refuses to testify is ordinarily inadmissible as evidence of the nondeclarant defendant's guilt when that defendant is tried alone. *Cf. id.*

[¶20] In the matter before us, Larsen was tried alone. Thus, contrary to the State's assertion, the *Bruton* analysis and the rule of redaction adopted in *Richardson* have no application in the matter. To the extent that we earlier held that a nontestifying accomplice's redacted out-of-court statement is admissible against a defendant who was tried alone, *see Platt*, 1997 ME 229, ¶¶ 3-6, 704 A.2d 370, we overrule that holding.

[¶21] Moreover, as the Supreme Court clarified in *Crawford v. Washington*, statements such as those made by Larsen's son during police interrogation well after the events that led to the burglary and theft charges are testimonial statements for purposes of the Confrontation Clause, and such testimonial statements of an unavailable declarant cannot be admitted in evidence of a defendant's guilt unless the defendant has had an opportunity to cross-examine that declarant. 541 U.S. 36, 51-52, 59, 65, 68-69 (2004); *see also State v. Mangos*, 2008 ME 150, ¶ 11, 957 A.2d 89. The redacted testimonial statements of Larsen's son could not be admitted because Larsen's son refused to testify and Larsen lacked the opportunity for cross-examination either at trial or in any earlier proceeding. *See Crawford*, 541 U.S. at 59, 68-69.

[¶22] Having determined that the trial court erred in admitting the statements of Larsen's son based on both the Rules of Evidence and the United States Constitution, we will vacate the judgment entered against Larsen unless the error in admitting the evidence is harmless.

C. Harmless Error

[¶23] "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." M.R. Crim. P. 52(a). "A constitutional error made at trial may be deemed harmless if we are satisfied beyond a reasonable doubt," based on the trial record as a whole, "that the error did not contribute to the verdict obtained." *State v. Patton*, 2012 ME 101, ¶ 17, 50 A.3d 544 (quotation marks omitted).

[¶24] We are not satisfied beyond a reasonable doubt that the error in admitting the statements of Larsen's son did not contribute to the verdict. *See id.* The improperly admitted statements from Larsen's son were the only pieces of evidence offered by the State that communicated the means by which the building supplies were removed from the Club property. The details contained in the statements clearly implicate Larsen as the "person" who, with the help of his son, drove to the Club's property from what had been Allen's garage, unlocked the Club's groomer building, took the building supplies, and concealed them on property owned by a friend of Larsen's who testified at trial about Larsen's storage

of materials on his property. We are not satisfied beyond a reasonable doubt that the properly admitted evidence alone would have persuaded the jury of Larsen's guilt. In these circumstances, we cannot conclude that the error was harmless, and we vacate the judgment of conviction.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

**On the briefs:**

Tammy Ham-Thompson, Esq., Farris Law, P.A., Gardiner, for appellant Richard A. Larsen Jr.

Todd R. Collins, District Attorney, and Carrie L. Linthicum, Asst. Dist. Atty., Presque Isle, for appellee State of Maine

**At oral argument:**

Tammy Ham-Thompson, Esq., for appellant Richard A. Larsen Jr.

Carrie L. Linthicum, Asst. Dist. Atty., for appellee State of Maine