MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 56
Docket:         Som-24-325
Argued:         February 7, 2025
Decided:        June 26, 2025

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

# STATE OF MAINE

v.

# RAYMOND ELLIS JR.

STANFILL, C.J.

[¶1]  Raymond Ellis Jr. appeals from a judgment of conviction for robbery (Class A), 17-A M.R.S. § 651(1)(E) (2025), and possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1)(1) (2023),[1] entered by the court (Somerset County, *Mullen, C.J.*) after a trial.[2]  Ellis was sentenced to twenty-five years' imprisonment for the robbery, with all but twenty years suspended and four years of probation, and to a concurrent term of three years'

---

[1]  Title 15 M.R.S. § 393(1) has since been amended.  *See* P.L. 2023, ch. 491, §1 (effective Aug. 9, 2024) (codified at 15 M.R.S. § 393(1) (2025)).

[2]  The jury returned a guilty verdict on one count each of robbery (Class A), 17-A M.R.S. § 651(1)(E) (2025); criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209(1), 1604(5)(A) (2025); and theft by unauthorized taking (Class E), 17-A M.R.S. § 353(1)(A) (2025), and the court found Ellis guilty of possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1)(1) (2023), after Ellis waived his right to a jury trial on that count.  The court merged the criminal threatening and theft counts with the robbery count for the purposes of sentencing.

imprisonment for possession of a firearm by a prohibited person. Ellis timely appealed. *See* 15 M.R.S. § 2115 (2025); M.R. App. P. 2A, 2B(b)(1).

[¶2] Ellis argues that he was entitled to an instruction that would permit the jury to infer that a witness who was not called by the State would not have corroborated the State's theory. He also contends that the sentencing court erred when it counted at both step one and step two of the sentencing analysis the fact that Ellis brandished firearms during the crime. We affirm the judgment of conviction but vacate the sentence because we agree with the parties that the sentencing judge erred by finding that Ellis failed to take responsibility for the crime and considering that fact as an aggravating factor.

## I. BACKGROUND

[¶3] Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Ouellette*, 2019 ME 75, ¶ 2, 208 A.3d 399. On August 5, 2023, Ellis, who was wielding a handgun, entered the Big Apple convenience store in Madison alongside a juvenile who was holding a sawed-off shotgun. A third person waited outside as a lookout.

[¶4] Wearing masks, Ellis and the juvenile pointed their guns at the store clerk upon entering the store. The clerk followed the juvenile's instructions to

open the cash register and get down on the floor, and Ellis took cash out of the register.  The clerk then stood up and opened the other register at the juvenile's instruction, and Ellis removed cash from the second register.  After taking several items, Ellis, the juvenile, and the lookout left.

## II.  DISCUSSION

### A.    Missing-Witness Jury Instruction

[¶5]  At trial, neither the State nor Ellis called the store clerk as a witness. When discussing jury instructions, Ellis requested a missing-witness instruction that would have permitted the jury to "consider . . . the unexplained failure of a party to present an[] obvious witness to corroborate other evidence which was presented in the case" and to infer "that [the missing] witness would not corroborate the testimony given."   Ellis acknowledges that such an instruction is contrary to *State v. Brewer*, 505 A.2d 774, 774 (Me. 1985).  There, we held that a party may not argue, nor may the factfinder draw, any inference as to whether a missing witness's testimony would be favorable or unfavorable. *Id.* at 777.

[¶6]  As a corollary to his proposed instruction, Ellis also objected to the court's instruction that the jury should not speculate about the testimony of a witness who was not called:

4

> You must decide the case based on the evidence presented to you. You must not speculate on what other witnesses might have been called -- on what other witnesses might have been called, or what other evidence might have been presented. And you must draw no inferences, unfavorable or favorable, by speculation about what else might have been presented to you. You must decide only from the evidence presented to you whether the facts at issue have been proven beyond a reasonable doubt.

*See* Alexander, *Maine Jury Instruction Manual* § 6-12 at 6-23 (2023 ed.).

[¶7] Ellis argues that we should overrule *Brewer* to the extent that it prevents criminal defendants—but not the State—from receiving an instruction permitting the jury to infer that a missing witness would not corroborate the State's other evidence. *See* 505 A.2d at 774. Ellis further contends that the "no-inference" instruction given in this case violated his rights under the United States and Maine Constitutions.[3]

[¶8] "We review constitutional interpretations de novo." *State v. Larsen*, 2013 ME 38, ¶ 17, 65 A.3d 1203 (quotation marks omitted).

[¶9] In *Brewer*, the trial court, in a jury-waived trial, found the defendant guilty of operating a vehicle while intoxicated and with a suspended license. 505 A.2d at 774. Brewer's vehicle had been involved in a single-car accident, but the police did not observe him driving. *Id.* at 774-75. Brewer testified that

---

[3] Because Ellis's arguments under the Maine Constitution were not preserved at trial and are undeveloped on appeal, we address only the arguments under the United States Constitution. *See State v. Moore*, 2023 ME 18, ¶¶ 17-20, 290 A.3d 533.

a friend had been driving him around that night and that he woke up alone in the vehicle after the accident. *Id.* at 775. The friend did not testify. The court drew an inference adverse to Brewer for his failure to call the friend as a witness. *Id.* We vacated the judgment and held that "in a criminal case the failure of a party to call a witness does not permit the opposing party to argue, or the factfinder to draw, any inference as to whether the witness's testimony would be favorable or unfavorable to either party." *Id.* at 777-78.

[¶10] "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). "Central to the right to a fair trial . . . is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds . . . not adduced as proof at trial." *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (quotation marks omitted). Regardless of which party requests a missing-witness-inference instruction, such an inference always "presents grave dangers of speculation and conjecture." *Brewer*, 505 A.2d at 776.

[¶11] By instructing the jurors that they must base their decision on the evidence before them and not on speculation, the court effectively protected Ellis's rights under the Fourteenth Amendment. *See id.*; *Estelle*, 425 U.S. at 503.

[¶12]  Nothing prevented Ellis from arguing that the State had failed to meet its burden to prove that he was guilty beyond a reasonable doubt.  In *State v. Russell*, we held that the trial court did not err in declining to give a defendant's proposed jury instruction that "would have informed the jury in part that the defendant may rely on relevant omissions in the police investigation to raise reasonable doubt."  2023 ME 64, ¶ 16, 303 A.3d 640 (quotation marks omitted).  We explained:

> A fundamental problem with [the defendant]'s proposed instruction on the quality of the police investigation is that it invites the jury to focus on something other than the sufficiency of the State's evidence in determining guilt.  Our standard jury instructions quite properly call upon the jury to not speculate on what other evidence might have been presented and what other witnesses might have been called.  *See* Alexander, *Maine Jury Instruction Manual* § 6-12 at 6-23 (2023 ed.).  [The defendant]'s proposed instruction calls for exactly the opposite. . . .
>
> Furthermore, [the defendant] suffered no prejudice because he was able to argue to the jury at length exactly what the court anticipated he would argue, namely that the detective's allegedly deficient investigation was a factor that the jury could and should consider in deciding whether the State's proof met the beyond a reasonable doubt standard.

*Id.* ¶¶ 20-21.

[¶13]  It is always appropriate for an accused to prod at the weaknesses in the State's case, including highlighting that a key witness was not called.  Like the defendant in *Russell*, who argued that the jury should consider the State's

faulty investigation, Ellis was free to argue that the State failed to meet its burden of proof by pointing out that the store clerk, who was the sole eyewitness to the robbery, was not called as a witness by the State. However, Ellis wanted to argue—and have the court instruct the jury—that the State did not call the store clerk because the clerk would have testified that Ellis was not one of the individuals who robbed him. Such an inferential jump is exactly the kind of improper speculation that is not permitted. *See Taylor v. Kentucky*, 436 U.S. 478, 484-85 (1978) (reiterating that an accused is "entitled to have . . . guilt or innocence determined solely on the basis of the evidence introduced at trial").

[¶14]  The court's jury instructions accurately reflected the law and our holding in *Brewer*, which we reaffirm today. *See* 505 A.2d at 777-78.

## B.  Sentencing

### 1.  Double-Counting of Sentencing Factors

[¶15]  Ellis was convicted of robbery under 17-A M.R.S. § 651(1)(E), which provides that the offense is a Class A crime if "[t]he actor is armed with a dangerous weapon in the course of [the] robbery." Ellis argues that the sentencing court erred by double-counting factors when it considered that firearms were brandished as an aggravating factor at step two because being

armed with a dangerous weapon is an element of the robbery—a consideration for step one. *See id.*

[¶16]  Whether the court erred in the application of the sentencing statute is a legal question cognizable on direct review. *See State v. Plummer*, 2020 ME 143, ¶ 11, 243 A.3d 1184; *State v. Murray-Burns*, 2023 ME 21, ¶ 14, 290 A.3d 542; *see also* 17-A M.R.S. § 1602 (2025). We "review a double-counting claim de novo." *Plummer*, 2020 ME 143, ¶ 11, 243 A.3d 1184.

[¶17]  In step one of the familiar sentencing analysis, "the court shall determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the individual." 17-A M.R.S. § 1602(1)(A); *see State v. Hewey*, 622 A.2d 1151 (Me. 1993).  In the second step, "the court shall determine the maximum term of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to the case." 17-A M.R.S. § 1602(1)(B).  These "sentencing factors include, but are not limited to, the character of the individual, the individual's criminal history, the effect of the offense on the victim and the protection of the public interest." *Id.*

[¶18]  A double-counting claim "poses the question of whether the sentencing court misapplied a legal principle" by considering the same factor at both step one and step two of the analysis. *Plummer*, 2020 ME 143, ¶¶ 11-14,

243 A.3d 1184. Although a factor must be considered only once and at the proper step in the analysis, "the same *fact* can generate multiple *factors*." *Id.* ¶ 14. "A sentencing court may consider the same facts at steps one and two of its sentencing analysis, provided that it does so for different purposes." *Id.*

[¶19]  What Ellis was doing with the firearm—whether it was hidden, pointed at someone, or brandished—is properly a part of the court's analysis under step one because it relates to the nature and seriousness of the offense and how the crime was committed. *See* 17-A M.R.S. § 1602. In step two of the analysis, the court may consider factors such as the impact on the victim—for example, the victim's experience of having a gun pointed at his head. *See id.*; *State v. Gray*, 2006 ME 29, ¶ 13, 893 A.2d 611 ("The objective factors concerning the impact of the crime on a victim are appropriate in the first step of the sentencing process, but the subjective factors of the impact are to be considered in the second step."). Thus, the same fact considered at step one may also be considered at step two provided it is for a distinct purpose. *Plummer*, 2020 ME 143, ¶¶ 14-17, 243 A.3d 1184 (holding in a drug trafficking case that the sentencing court did not double-count when it considered at step one "the commercial operation in terms of scale, relating to the seriousness of the crime" and at step two considered the defendant's "commercial motive in noting that

his actions were not based on an addiction, but rather purely on selfish, monetary gain" (quotation marks omitted)); *State v. Sweeney*, 2019 ME 164, ¶¶ 18-19, 221 A.3d 130 (holding in a domestic violence murder case that the court did not double-count by considering at step one the objective element that the defendant "killed the woman who had shared his life for over ten years" and considering at step two the history of domestic violence in the couple's relationship, including the defendant's controlling and threatening behavior).

[¶20]  Because we vacate the sentence for a different reason, the sentencing court will have the opportunity to clarify the purposes for which it considered the facts at each stage, and we need not decide whether the court double-counted factors at steps one and two.

### 2.    Failure to Take Responsibility as an Aggravating Factor

[¶21]  In step two of its sentencing analysis, the court found that Ellis failed to take responsibility for his conduct and considered that failure as an aggravating factor:

> Aggravating factors is the fact that firearms were brandished, although thankfully not used, but as I said, they certainly could have been. *A failure on the part of Mr. Ellis to take responsibility for his actions*. . . . I find the aggravating factors significantly outweigh the mitigating factors present.  And that's why the maximum sentence has gone up from 20 to 25.

Both parties acknowledge that, on this record, the sentencing court erred by considering Ellis's failure to take responsibility as an aggravating factor. We agree and take the opportunity to clarify when failure to take responsibility may be used as an aggravating sentencing factor.

[¶22]  We review questions of law, including the legality of a sentence, de novo. *State v. Brockelbank*, 2011 ME 118, ¶ 15, 33 A.3d 925.

[¶23]  In general, remorse and acceptance of responsibility are mitigating factors in imposing a sentence. *See, e.g.*, *State v. Berube*, 1997 ME 165, ¶¶ 12-13, 698 A.2d 509; *State v. Bentley*, 2021 ME 39, ¶ 7, 254 A.3d 1171.  Courts may also consider affirmatively demonstrated lack of remorse and rejection of responsibility as aggravating factors. *See, e.g.*, *State v. Roberts*, 641 A.2d 177, 178-79 (Me. 1994).

[¶24]  We emphasize, however, that the fact that a particular factor can be considered mitigating does not mean that the *absence* of that factor is necessarily aggravating. This is particularly true when the only evidence of lack of remorse or failure to take responsibility is that the defendant exercised the right to require the State to prove guilt beyond a reasonable doubt at a trial.  "It is black-letter law that an accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to a trial."

*State v. Farnham*, 479 A.2d 887, 891 (Me. 1984). "[S]imply exercising the right to trial can never be cited as an aggravating factor." *State v. Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533; *see, e.g.*, *State v. Grindle*, 2008 ME 38, ¶ 15, 942 A.2d 673, and cases cited therein.

[¶25]  An accused also has a right to remain silent and not to testify at trial.  *See State v. White*, 2022 ME 54, ¶ 27, 285 A.3d 262 ("Both the Fifth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution provide a criminal defendant with the absolute right not to testify in his own defense at trial.").  And, as with the right to have a trial, a defendant cannot be punished for exercising that right.  "There is a difference between increasing a defendant's sentence because the defendant chooses to exercise the right to trial and to testify, and considering a defendant's conduct at trial and information learned at trial . . . in determining the genuineness of a defendant's claim of personal reform and contrition."  *Grindle*, 2008 ME 38, ¶ 19, 942 A.2d 673 (quotation marks omitted).

[¶26]  To be clear, any consideration of a defendant's failure to take responsibility as an aggravating factor must be based on affirmative evidence in the record to support that finding, ordinarily because the defendant testified at the trial or allocuted at the sentencing hearing.  *See, e.g.*, *State v. Coleman*,

2024 ME 35, ¶¶ 23-27, 315 A.3d 698 (holding that a lack of remorse expressed at allocution may be factor in sentencing); *State v. Woodard*, 2025 ME 32, ¶¶ 24-26, --- A.3d --- (noting that the court properly relied on statements made by the defendant in a letter to the court and in his allocution in finding a lack of responsibility and considering it as a sentencing factor); *Grindle*, 2008 ME 38, ¶ 26, 942 A.2d 673 (holding that the court properly concluded that the defendant's untruthful testimony demonstrated an unwillingness to accept responsibility for his actions). A defendant's sentence may not be increased, however, because he chose to forgo expressing remorse or taking responsibility at trial or sentencing.

[¶27] Here, Ellis exercised his right to have a trial. He also exercised his right not to testify at trial, and he remained silent and did not allocute at sentencing. The sentencing court did not identify any support for its finding that Ellis failed to take responsibility, nor can we find any in the record. We are thus left with the conclusion that his sentence was increased for asserting his right to trial and his right not to testify, in violation of his constitutional rights.

[¶28] Although the court identified other aggravating factors, "[a] sentence based in part on an impermissible consideration is not made proper simply because the sentencing judge considered other permissible factors as

well, and the quantitative role the impermissible factor played in such decision does not detract from the nature of the constitutional violation." *Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533 (alterations, citation, and quotation marks omitted).

[¶29] Instead, "[i]t is sufficient to render a sentence invalid if it reasonably appears from the record that the trial court relied in whole or in part upon the defendant's election to stand trial." *Id.* ¶ 26 (alterations and quotation marks omitted). "We need not conclude that the sentencing court in fact relied upon an improper consideration," and "[a]ny doubt as to whether the defendant was punished for exercising his right to trial must be resolved in favor of the defendant." *Id.* (quotation marks omitted).

[¶30] We conclude that the sentencing court erred when it found that Ellis failed to take responsibility and considered that failure as an aggravating factor in his sentencing, and we therefore vacate Ellis's sentence and remand to the sentencing court for resentencing.

The entry is:

> Sentence vacated. Remanded for resentencing consistent with this opinion. Judgment affirmed in all other respects.

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Raymond Ellis Jr.

Maeghan Maloney, District Attorney, Timothy Snyder, First Asst. Dist. Atty., and Francis J. Griffin, Dep. Dist. Atty. (orally), Prosecutorial District IV, Skowhegan, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2024-6
FOR CLERK REFERENCE ONLY