MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2025 ME 90
Docket:       Sag-24-362
Argued:       May 7, 2025
Decided:      September 30, 2025

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.[*]

## STATE OF MAINE

v.

## KENNETH M. CHASE JR.

LAWRENCE, J.

[¶1]  Kenneth M. Chase Jr. appeals from a judgment of conviction entered by the trial court (Sagadahoc County, *Hjelm, A.R.J.*) after a jury returned guilty verdicts on three counts of gross sexual assault, three counts of domestic violence assault, and three counts of endangering the welfare of a child.  Chase argues that the court committed obvious error by failing to instruct the jury regarding specific unanimity and erred in its sentencing analysis by double counting the fact that Chase committed multiple sexual assaults.  We disagree and affirm the judgment.

---

[*] Although Justice Horton participated in this appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the jury's verdict, the following facts are supported by the record.  *See State v. DesRosiers*, 2024 ME 77, ¶ 2, 327 A.3d 64.

[¶3]  Chase is the victim's father.  Chase sexually assaulted the victim more times than she could count.  The earliest assault that the victim could remember occurred when she was in the second grade.  The victim also recalled an incident that occurred around the same time when she and Chase were in a Hannaford parking lot and engaged in sexual acts, after which he told her to check her underwear for blood.[1]

[¶4]  Following this general testimony about the nature of her relationship with her father, the victim testified as to the specific incidents charged in the indictment, which consisted of three distinct incidents of sexual assault that occurred when the victim was sixteen years old.  The first incident occurred in late December 2021.  Chase and the victim were in the compact home where the family was living while building a larger house next door. The compact home had a surveillance camera that recorded most of the interior and

---

[1]  The victim testified that the assaults were "pretty much the same each time" and would involve oral and then penile penetrative sexual acts.  The victim further testified that she could not recall a time in her life when her relationship with her father did not involve sexual acts.

was aimed at the front door. On that day, Chase told the victim to turn off the camera, which the victim understood to mean he wanted it off so that they could engage in sexual acts. Before Chase could assault the victim, she turned on an audio recorder on her phone and left the phone on the couch to record the encounter. Unaware of the ongoing audio recording, Chase then sexually assaulted the victim. After the assault was over, Chase told the victim to plug the camera back in, to make coffee for him, and "to wait to go outside" because it would seem weird if they left the home at the same time.

[¶5] The second incident occurred in January 2022, when the victim was in Chase's work truck on the side of a road at about 4:00 a.m. during a snowstorm. Chase asked the victim if she had thought about what she had done earlier. The victim explained that she had previously refused sexual acts and told him that "she had thought about it, and [she] was sorry." Chase then attempted to put a water bottle inside the victim's vagina. The victim testified that Chase's conduct hurt her, but he asked her to keep trying. Eventually, Chase took the water bottle out, and they engaged in other sexual acts.

[¶6] The third incident was in late May 2022, when Chase texted the victim to come downstairs after the rest of the family had gone to bed. Once

4

she was downstairs, Chase and the victim engaged in oral and then penetrative sexual acts.

[¶7]  Around the beginning of June 2022, the victim sent an email to her mother that made the mother concerned that Chase was sexually assaulting the victim.  The victim's mother went to the Sagadahoc County Sheriff's Office to report her concerns.  The mother obtained a protection from abuse order on behalf of the victim, who was then removed from Chase's care.

[¶8]  The victim was interviewed at a Children's Advocacy Center, where she disclosed how Chase had repeatedly sexually assaulted her.  In October 2022, a grand jury indicted Chase on the following nine counts:

- Count 1: gross sexual assault (Class B), 17-A M.R.S. § 253(2)(H) (2025), on or about December 31, 2021;

- Count 2: gross sexual assault (Class B), 17-A M.R.S. § 253(2)(H), on or about January 29, 2022;

- Count 3: gross sexual assault (Class B), 17-A M.R.S. § 253(2)(H), on or about May 24, 2022;

- Count 4: domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2021),[2] on or about December 31, 2021;

- Count 5: domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A), on or about January 29, 2022;

---

[2]  Title 17-A M.R.S. § 207-A(1)(A) has since been amended, but the amendment does not affect this appeal.  *See* P.L. 2023, ch. 465, § 2 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 207-A(1)(A) (2025)).

- Count 6: domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A), on or about May 24, 2022;

- Count 7: endangering the welfare of a child (Class D), 17-A M.R.S. § 554(1)(C) (2025), on or about December 31, 2021;

- Count 8: endangering the welfare of a child (Class D), 17-A M.R.S. § 554(1)(C), on or about January 29, 2022; and

- Count 9: endangering the welfare of a child (Class D), 17-A M.R.S. § 554(1)(C), on or about May 24, 2022.

[¶9]  The court held a three-day jury trial in late May 2024.  Sometime after the jury retired to deliberate, it reported that it was in a partial deadlock. In response, the court brought the jury back into the courtroom and gave it the standard American Bar Association instruction for deadlocked juries. Ultimately, the jury returned guilty verdicts on all nine counts.

[¶10]  The court began sentencing in late June 2024 and continued it to July 19, 2024, when it concluded.  The court heard statements from the victim's mother as well as from Chase's wife, colleagues, and friends.

[¶11]  The court began its analysis with the factors in 17-A M.R.S. § 1501 (2022),[3] describing how "the legislature has provided some guidance as to what sentences are supposed to try to do and what they're supposed to not do."  The

---

[3]  Title 17-A M.R.S. § 1501 has since been amended multiple times, but the amendments do not affect this appeal.  *See* P.L. 2021, ch. 647, §§ B-33, B-65 (effective Jan. 1, 2023); P.L. 2023, ch. 430, § 2 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 1501 (2025)).

6

court focused on the deterrent effect, both general and specific, of sentences; the need for the sentences to reflect the seriousness of the crimes for which the defendant was convicted by taking into account the age of the victim, especially when there is a reduced ability for self-protection; and the fact that these assaults were crimes of domestic violence which must be reflected in sentences that are imposed. *See id.* § 1501(9). The court described these as the most salient factors but noted that it considered the entire section 1501 framework in arriving at its determination.

[¶12] The court outlined its overall analysis by grouping the charges based on the dates Chase committed the offenses, i.e., Counts 1, 4, and 7 committed on or about December 31, 2021; Counts 2, 5, and 8 committed on or about January 29, 2022; and Counts 3, 6, and 9 committed on or about May 24, 2022. It then concluded that the sentences within each group of charges would run concurrently because they arose from the same criminal act. To achieve the goals of sentencing, however, the court concluded that the three groups of sentences would run consecutively due to the serious and heinous nature of the multiple criminal episodes. *See* 17-A M.R.S. § 1608(1)(D) (2025).

[¶13] Moving to the individual counts, the court addressed the first incident, concerning Counts 1, 4, and 7. It noted the victim's wherewithal in

recording the assault and the graphic nature of Chase's recorded comments, including his manufacturing a charade that the victim was a willing participant, asking the victim whether she had an orgasm, and even going so far as to tell her to say that she loved having sex with him. The court set the basic sentence on Count 1 at "something close to the maximum" of ten years' imprisonment. *See* 17-A M.R.S. § 1604(1)(B) (2025). It then considered the aggravating factors, including the significant subjective impact on the victim and a felony conviction that Chase had from 2007, as well as the mitigating factors of Chase's strong employment history and deep support in his community, and adjusted the sentence to eight years' imprisonment. Finally, the court determined that none of the eight years would be suspended and that the sentences for Counts 4 and 7 would be 364 days' imprisonment, served concurrently with the eight-year term imposed on Count 1.

[¶14] Next, the court considered the second set of charges, consisting of Counts 2, 5, and 8. It set the basic sentence on Count 2 at "something close to the maximum." It then adjusted the sentence to nine years' imprisonment based on the same factors that it considered for the first set of charges and the additional factor that "as established by the jury's verdict, Mr. Chase had previously committed one act of gross sexual assault against [the victim]." The

8

court determined that none of the nine years would be suspended and that the sentences for Counts 5 and 8 would be 364 days' imprisonment served concurrently with the nine-year sentence.

[¶15]  Lastly, on the third set of charges, Counts 3, 6, and 9, the court set the basic sentence somewhere "close to the maximum" of ten years' imprisonment on Count 3, and after considering the aggravating and mitigating factors, including the jury's determination "that Mr. Chase sexually assaulted [the victim] at least twice previously," set the final sentence at ten years' imprisonment.  The court suspended all of the ten-year sentence and imposed probation for a period of three years.  It then set a sentence of 364 days on Count 6, suspended that sentence, and imposed probation for a period of one year to run concurrently with Count 3.  Finally, the court imposed an unconditional discharge on Count 9.[4]  Ultimately, the court imposed an aggregate sentence of twenty-seven years of incarceration, with all but seventeen years suspended and three years of probation.

---

[4]  The court explained that, as Count 9 was charged, probation is not an authorized sentence for endangering the welfare of a child.  Therefore, it had no choice other than to impose an unconditional discharge.  *See* 17-A M.R.S. § 2051(2) (2025).

[¶16]   Chase timely appealed the convictions and applied for leave to appeal his sentence, which the Sentence Review Panel granted.  *See* M.R. App. P. 2B(b)(1), 12A(b)(5)(B), 20(a)(1); 15 M.R.S. §§ 2115, 2151 (2025).

## II.  DISCUSSION

[¶17]   We now address whether the trial court erred in not giving a specific unanimity instruction to the jury and whether the trial court impermissibly double counted the fact that Chase committed multiple assaults during its sentencing analysis, resulting in some or all of the following: an illegal sentence, a disregard of the relevant factors in the sentencing analysis, or an abuse of the court's sentencing power.

## A.     A specific unanimity instruction was not required.

[¶18]   The Maine Constitution provides that unanimity in a jury verdict "shall be held indispensable." Me. Const. art. I, § 7.  "A specific unanimity instruction explains to jurors that they are required to unanimously agree that a single incident of the alleged crime occurred that supports a finding of guilt on a given count.  Thus, if the State alleges multiple instances of the charged offense, any one of which is independently sufficient for a guilty verdict as to that charge, specific unanimity instructions are proper." *State v. Osborn*, 2023 ME 19, ¶ 34, 290 A.3d 558 (citation and quotation marks omitted).  The risk

that a specific unanimity instruction seeks to avoid is that the jury will agree to a guilty verdict on a particular charge without unanimous agreement on which incident forms the basis for the charge. Chase did not object to the instructions given or request a specific unanimity instruction.[5]

[¶19] "We review jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632. Even when, unlike here, an issue has been preserved, we would not vacate a conviction if the requested instruction was sufficiently covered in the instructions that the court gave. *Id.*

[¶20] Here, each count of the indictment alleged that the offense occurred on or about a specific date. For example, Count 1 charged that the offense of gross sexual assault occurred "[o]n or about December 31, 2021." In its opening instructions, the court explicitly correlated each count with the date alleged as to that count. Although the victim alluded to being violated more times than she could count, her testimony focused on three incidents taking

---

[5] The State argues on appeal that Chase waived the instruction while Chase argues that the argument should be reviewed under our standard for obvious error. Because we find no error, we need not address whether the argument was waived or whether, had there been error, that error would meet our standard for concluding that the error was obvious.

place on the three dates charged in the indictment and referenced in the instructions.[6] When instructing the jury at the end of the trial, the court again expressly linked each count to one alleged incident occurring on the specific date charged.[7] The prosecutor's closing argument went over the evidence, carefully linking it to these three specific dates.[8] After the closing arguments, the court further instructed the jury that when the jury reported its verdicts, the court would go through each count separately, again repeating the specific date for each count. Accordingly, after the jury reached its verdicts, the court asked the jury for its verdict on each count separately, again referencing the date identified in each count.[9]

[¶21] The court made it clear that the jury was to decide "what happened back on the dates that are relevant to the case." The court also instructed the

---

[6] As noted above, there were nine counts relating to three incidents occurring on three dates: the first three counts charged gross sexual assault for each of the three dates, the next three counts charged domestic violence assault as to the same incidents, and the last three counts charged endangering the welfare of a child as to the same incidents.

[7] For example, the court instructed: "First Counts 1 through 3, gross sexual assault. In Counts 1 through 3 the defendant is charged with gross sexual assault. He is charged with committing these crimes on or about the following dates. December 31, 2021, which is Count 1, January 29th of 2022, which is Count 2, and May 24, 2022, which is Count 3."

[8] For example, the prosecutor stated, "So I'm going to take this step by step going through the different dates."

[9] For example, the court asked the jury as to "Count 1, the charge of gross sexual assault on or about December 31, 2021, does the jury find the defendant guilty or not guilty?"

jury that "[f]or the defendant to be found guilty of a particular charge the state must prove its allegations for that charge beyond a reasonable doubt." The court emphasized to the jury that each count needed to be considered separately:

> You must consider each charge independently. You may find the defendant guilty of all charges, not guilty of all charges, or guilty of some charges and not guilty of the others.
>
> You must consider the evidence and the instructions separately as to each charge and reach a separate decision as to whether the state has proven each charge beyond a reasonable doubt.

When the jury suggested that it was deadlocked, the court gave a standard instruction asking them to return to deliberations, and reiterated that "[i]n order to return a verdict on any particular count, your vote on that count must be unanimous."

[¶22] In short, this is not a case in which the State charged a range of dates within one count or pursued evidence of multiple potential offenses related to each count. To the contrary, the State alleged a specific date in each count of the indictment, each count was supported by distinct factual sequences that occurred in different locations with significant time between each sexual assault, and the court instructed the jury to focus separately on each charge, going so far as to provide the dates for each set of charges in the instructions.

The jurors could not vote to convict Chase on a given charge without agreeing on which incident was involved. *See State v. Chase*, 2023 ME 32, ¶¶ 17-19, 294 A.3d 154 (concluding that no specific unanimity instruction is required under the obvious error analysis when only one instance of conduct could support the conviction). Taken as a whole, the jury instructions "informed the jury correctly and fairly in all necessary respects of the governing law." *Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632. The instructions given sufficiently covered the requirement that the jurors "unanimously agree that a single incident of the alleged crime occurred that supports a finding of guilt on a given count." *State v. Russell*, 2023 ME 64, ¶ 25, 303 A.3d 640; *see Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632. As such, there was no error, much less obvious error, in the instructions.

**B.    The court did not err by considering the number of sexual assaults at separate points in its sentencing analysis.**

[¶23] Chase argues that the court improperly considered the multiplicity of the sexual assaults both when deciding to impose consecutive sentences and during step two of its *Hewey* analyses, which resulted in illegal double counting that we should review de novo. Chase brings this appeal through the process of sentence review by the Sentence Review Panel, which primarily focuses on the propriety of sentences and the manner in which they are imposed but also

allows attacks on the legality of sentences, which are typically raised on direct appeal. *See* 15 M.R.S. §§ 2151-52; M.R. App. P. 20(a)(1); *State v. Murray-Burns*, 2023 ME 21, ¶¶ 13-17, 290 A.3d 542 (allowing arguments regarding the legality of a sentence in appeals taken through the Sentence Review Panel process). We review the legality and propriety of the sentence separately because they require the application of different standards of review.

### 1. Standards of Review

[¶24] First, we review Chase's double counting claim de novo because it is a challenge to the legality of the sentence.[10] *See State v. Ellis*, 2025 ME 56, ¶ 16, --- A.3d --- (reviewing double counting claims de novo on direct appeal); *State v. Plummer*, 2020 ME 143, ¶ 11, 243 A.3d 1184 (same, on sentence review). Second, we review the propriety of the trial court's aggregate sentence "for disregard of the relevant sentencing factors or abuse of the court's sentencing power." *State v. Koehler*, 2012 ME 93, ¶ 32, 46 A.3d 1134; *see also State v. Reese*, 2010 ME 30, ¶ 23, 991 A.2d 806. In doing so, we afford the trial court considerable discretion when evaluating whether it "disregarded the statutory sentencing factors, abused its sentencing power, permitted a manifest

---

[10] At oral argument, Chase's counsel agreed that there were both legal and propriety components to the sentence appeal.

and unwarranted inequality among sentences of comparable offenders, or acted irrationally or unjustly in fashioning a sentence." *State v. Watson*, 2024 ME 24, ¶ 20, 319 A.3d 430.

## 2. Chase's sentence did not result from improper double counting.

[¶25] Improper double counting occurs when the sentencing court considers the same factor at multiple steps of the *Hewey* analysis. *See Ellis,* 2025 ME 56, ¶ 18, --- A3d ---; *Plummer*, 2020 ME 143, ¶¶ 11-14, 243 A.3d 1184; *State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993); 17-A M.R.S. § 1602(1)(A)-(C) (2025). We have never extended the prohibition on double counting across multiple sentencing analyses—namely section 1608 (consecutive sentences) and section 1602 (*Hewey* analysis)—that are employed by the court when crafting an aggregate sentence, and we decline to do so today.

[¶26] In our sentencing jurisprudence, we have made it clear that "the same *fact* can generate multiple *factors*. A sentencing court may consider the same facts at steps one and two of its sentencing analysis, provided that it does so for different purposes." *Plummer*, 2020 ME 143, ¶ 14, 243 A.3d 1184; *see also Ellis,* 2025 ME 56, ¶ 19, --- A.3d --- ("[T]he same fact considered at step one may also be considered at step two provided it is for a distinct purpose."); *State v. Gray*, 2006 ME 29, ¶ 13, 893 A.2d 611 ("[A] court [may] refer to the

same facts in the various steps of the sentencing analysis so long as the court is weighing different considerations at each step." (quotation marks omitted)); *State v. Pfeil*, 1998 ME 245, ¶¶ 16-18, 720 A.2d 573 (considering similar facts at steps one and two of the *Hewey* analysis for different purposes); *State v. Shulikov*, 1998 ME 111, ¶ 23, 712 A.2d 504 (discussing the difference between objective and subjective inquiries and allowing the same fact to be considered during each so long as it is for different considerations). Here, the court used a similar fact at multiple points in its aggregate sentencing analysis. As the court's analysis of the facts in this manner is without question a proper sentencing practice, we turn to consider the legality of the sentence.

[¶27]  The legality of the sentence in this case is governed by *State v. Downs*, 2009 ME 3, 962 A.2d 950. There, we stated that the court did not abuse its discretion by imposing consecutive sentences[11] based on the multiplicity of the convictions and that the court appropriately considered the cumulative effect of the crimes when setting the maximum sentence at step two of the *Hewey* analysis. *Id.* ¶¶ 24, 30. We further clarified that when a court is addressing multiple counts, it "has the discretion to construct an aggregate

---

[11] Chase does not argue that the sentencing court abused its discretion by imposing consecutive sentences, and in any event, we conclude that the court reasonably exercised its discretion in doing so. *See State v. Perry*, 2017 ME 74, ¶¶ 22-23, 159 A.3d 840.

sentence using a few of the most serious or representative counts (the 'primary

counts') as its foundation. As to those counts, the court must engage in separate

*Hewey* analyses, and must also perform the analysis required by 17–A M.R.S.

§ [1608] if the court wishes to consider consecutive sentences. As to the

remaining counts, the court need not engage in separate *Hewey* analyses so long

as the sentences for those counts will run concurrent with one or more of the

primary counts." *Id.* ¶ 14.

[¶28] Here, the sentencing court did precisely that. After discussing the

relevant factors laid out in 17-A M.R.S. § 1501, the court noted:

> But in my view, the three sets of sentences that will result from
> consideration of the three sets of charges will be consecutive to
> each other. And I'm relying on the provisions of Section 1608 of the
> criminal code, and the Court is authorized to impose consecutive
> sentences -- and I'm looking specifically at subsection 1,
> [paragraph] D -- when the *seriousness of the criminal conduct
> involved* in -- in multiple criminal episodes requires a sentence of
> imprisonment in excess of the maximum available for the most
> serious offense. With respect to each of those three sets of charges,
> gross sexual assault, of course, is the most serious. Gross sexual
> assault charges are Class B crimes, B as in Boston. Each is
> punishable by up to ten years.
>
> In my view, the -- the imposition of concurrent sentences
> across the three gross sexual assault charges would not achieve the
> goals of sentencing that I outlined pursuant to Section 1501
> *because these offenses were so serious, so heinous, that the overall
> outcome of the case in terms of sentencing calls for the sentences to
> be in excess of ten years*. And so because of that, pursuant to Section
> 1608, sub 1, [paragraph] D, in my view this is a situation where

18

> consecutive sentences are appropriate. Again concurrent within each of the three sets of charges, but consecutive from one incident to the other.

(Emphasis added.)

[¶29] Next, the court chronologically addressed the three events related to the primary counts of gross sexual assault, starting with December 31, 2021. After imposing the sentence for the first gross sexual assault conviction, the court moved on to the second primary count and stated during step two of its *Hewey* analysis,

> But there's one difference. And there's – the difference is that on Count II, as established by the jury's verdict, Mr. Chase had previously committed one act of gross sexual assault against [the victim]. And so I take into account the fact that this was a repeat of what had happened before. And so there's not a single, isolated incident when we get to Count II. There's at least one prior act of gross sexual assault that Mr. Chase had inflicted on [the victim].

Then, when the court got to step two of the *Hewey* analysis for the third primary count, it stated,

> Then on the second step of the analysis, again it's all the factors that I mentioned previously, aggravating and mitigating. But now the difference is that with respect to Count III, there has been a -- it's been established that Mr. Chase sexually assaulted [the victim] at least twice previously. Once as reflected in Count I, the other as reflected in Count II. So again, the aggravating factors take on greater weight because of those prior acts. And so in the end, in my view, the maximum period of incarceration on Count III is the maximum, which would be ten years.

Contrary to Chase's argument, the court's sentencing analysis was a model of fidelity to the law. *See State v. Sweeney*, 2019 ME 164, ¶ 18, 221 A.3d 130. It followed the procedure laid out in *Downs* and, in doing so, discussed the serious and heinous nature of the multiple gross sexual assaults, justifying consecutive sentences. Then, at step two of its analyses on Counts 2 and 3, it addressed the jury's determination that Chase sexually assaulted the victim multiple times. Thus, it contemplated similar facts for different considerations, something we have repeatedly held to be an appropriate sentencing practice.[12] *See supra* ¶ 26.

### 3. The court properly considered the sentencing factors and did not abuse its sentencing power under 15 M.R.S. §§ 2154-55.

[¶30] In considering Chase's argument about the propriety of his sentence, we look to the objectives and factors provided by the Legislature in 15 M.R.S. §§ 2154-55. Section 2154 provides the following general objectives for our discretionary review process:

> **1. Sentence correction.** To provide for the correction of sentences imposed without due regard for the sentencing factors set forth in this chapter;

---

[12] We note that Chase does not argue that his overall sentence is disproportionate under article I, section 9 of the Maine Constitution, which provides that "all penalties and punishments shall be proportioned to the offense." Me. Const. art I, § 9; *see also Downs*, 2009 ME 3, ¶ 32 n.2, 962 A.2d 950. Therefore, no further analysis is required in regard to Chase's claim of the illegality of the sentence imposed by the court. *Cf. State v. Weddle*, 2024 ME 26, ¶¶ 10-14, 314 A.3d 234.

20

      **2. Promote respect for law.**  To promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process;

      **3. Rehabilitation.**  To facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders; and

      **4. Sentencing criteria.**  To promote the development and application of criteria for sentencing which are both rational and just.

Section 2155 outlines the following factors that we consider when reviewing a discretionary sentence appeal:

      **1. Propriety of sentence.**  The propriety of the sentence, having regard to the nature of the offense, the character of the offender, the protection of the public interest, the effect of the offense on the victim and any other relevant sentencing factors recognized under law; and

      **2. Manner in which sentence was imposed.**  The manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based.

In applying these considerations provided by the Legislature, we review the sentencing court's decision for a disregard of the relevant 17-A M.R.S. § 1501 sentencing factors[13] or for an abuse of its sentencing power. *See Koehler*, 2012 ME 93, ¶ 32, 46 A.3d 1134.

---

[13] The 17-A M.R.S. § 1501 (2022) factors consist of the following:

**1. Prevent crime.** Prevent crime through the deterrent effect of sentences, the rehabilitation of persons and the restraint of individuals when required in the interest of public safety;

**2. Encourage restitution.** Encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served;

**3. Minimize correctional experiences.** Minimize correctional experiences that serve to promote further criminality;

**4. Provide notice of nature of sentences that may be imposed.** Give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;

**5. Eliminate inequalities in sentences.** Eliminate inequalities in sentences that are unrelated to legitimate criminological goals;

**6. Encourage just individualization of sentences.** Encourage differentiation among persons with a view to a just individualization of sentences;

**7. Elicit cooperation of individuals through correctional programs.** Promote the development of correctional programs that elicit the cooperation of convicted individuals;

**8. Permit sentences based on factors of crime committed.** Permit sentences that do not diminish the gravity of offenses, with reference to the factors, among others, of:

A. The age of the victim, particularly of a victim of an advanced age or of a young age who has a reduced ability to self-protect or who suffers more significant harm due to age;

B. The selection by the person of the victim or of the property that was damaged or otherwise affected by the crime because of the race, color, religion, sex, ancestry, national origin, physical or mental disability, sexual orientation, gender identity or homelessness of the victim or of the owner or occupant of that property; and

C. The discriminatory motive of the person in making a false public alarm or report in violation of section 509 subsection 1; and

**9. Recognize domestic violence and certified domestic violence intervention programs.** Recognize domestic violence as a serious crime against the individual and society and to recognize domestic violence intervention programs certified pursuant to Title 19-A, section 4116 as the most appropriate and effective community intervention in cases involving domestic violence.

[¶31]  Sentencing courts are not required to conduct a mechanical analysis of every section 1501 factor, and we afford courts "significant leeway in what factors it may consider and the weight any given factor is due when determining a sentence." *State v. Bentley*, 2021 ME 39, ¶ 11, 254 A.3d 1171.

[¶32]  On this record, we conclude that the court properly exercised its sentencing power.  The court focused on the deterrent effect of the sentence, which involves the first and fourth factors.  It emphasized the relationship between the victim and the defendant, as well as the victim's age, both of which involve factors six and eight.  Finally, the court highlighted the domestic violence nature of the assaults, which involves the ninth factor and requires the court to recognize domestic violence as a serious crime.

[¶33]  We are satisfied that the court's consideration of the relevant factors and case-specific facts resulted in a carefully crafted sentence and that the record exhibits no disregard for the legislatively provided sentencing factors, no manifest and unwarranted inequality among sentences of comparable offenders, and no indication that the court acted irrationally or unjustly when imposing the sentence.  *See Watson*, 2024 ME 24, ¶ 20, 319 A.3d 430.

The entry is:

Judgment affirmed.

_____

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Kenneth M. Chase Jr.

Natasha Irving, District Attorney, and Valerie A. Adams, Asst. Dist. Atty (orally), Sagadahoc County District Attorney's Office, Bath, for appellee State of Maine

Sagadahoc County Unified Criminal Docket docket number CR-2022-397
FOR CLERK REFERENCE ONLY